[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 245.]

BROWN ET AL., APPELLEES, *v*. CITY OF DAYTON ET AL., APPELLANTS.

[Cite as *Brown v. Dayton*, 2000-Ohio-148.]

*Municipal corporations—Zoning–Proposed rezoning ordinance adopted by city—Validity of ordinance challenged twice—Civil procedure—Application of doctrine of res judicata.*

(No. 99-164—Submitted November 17, 1999—Decided July 12, 2000.)

APPEALS from the Court of Appeals for Montgomery County, Nos. CA-16875 and CA-16876.

_____

{¶ 1} This case involves the efforts of appellant Waste Management of Ohio, Inc. ("WMO") to construct a waste disposal and recycling facility within the boundaries of appellant city of Dayton ("City"). Appellees seek to overturn the rezoning ordinance that allowed WMO to construct the facility on land that was previously zoned residential.

{¶ 2} On May 23, 1990, WMO submitted an application to rezone one hundred thirteen acres of land in Dayton from a single-family residential classification to light industrial, so that it could operate a recycling and disposal facility. On July 12, 1990, WMO filed an additional application for a "planned development," in an effort to operate a sanitary landfill on the land as well.

{¶ 3} The "planned development" concept is a part of the Dayton Revised Code of General Ordinances, R.C.G.O. 150.260. The planned development classification allowed for multiple uses and functions within one large tract of land. By law, an applicant for a planned development must provide a development plan, which must contain a site plan showing "the location and arrangement of all existing and proposed buildings and structures, the proposed traffic circulation

pattern within the Planned Development, the location and width of all proposed streets and public ways" and other structures. R.C.G.O. 150.266.

{¶ 4} The Plan Board of the City, which reviews planned development applications and makes recommendations thereon to the City Commission, held a public hearing on WMO's proposal on November 13, 1990. Following that hearing, the Plan Board recommended disapproval of the proposed rezoning.

{¶ 5} On November 14, 1990, WMO appealed that decision to the commission. The commission, after a hearing on the matter, took no action. By ordinance, if the commission does not act within three months, the proposal is deemed defeated. R.C.G.O. 150.481.

{¶ 6} On February 22, 1991, WMO responded to the proposal's defeat by filing suit in federal court against the City, the City Commission, and the City Plan Board. The judge in that case issued an order directing settlement, and the parties eventually entered into a settlement agreement and consent decree.

{¶ 7} On February 19, 1992, the commission set a public hearing for March 25, 1992, concerning WMO's proposed rezoning ordinance. On February 22, 1992, the Clerk of the commission published notice of the hearing and placed maps and text of proposed Ordinance 28527 ("Ordinance") on file for public inspection.

{¶ 8} At the beginning of the March 25, 1992 hearing, the clerk read the proposed Ordinance. The Ordinance read was identical to the one placed on file for public view but for one relevant difference. Section 2 of the Ordinance, which included the details of the proposed plan development, modified the development's setback, reducing from three hundred feet to one hundred fifty feet the green buffer strip that had to be provided on all sides of the landfill. After the hearing, the commission set the Ordinance for an April 8, 1992 vote.

{¶ 9} On March 27, 1992, the clerk made available to the public the text of the proposed Ordinance as it was read at the March 25, 1992 hearing. On March 30, 1992, opponents of the landfill, including one of the plaintiffs in this case, James

2

L. Sweeney, filed a complaint seeking to enjoin the commission from voting on or enacting the proposed Ordinance. That complaint was based in part on the argument that the City Commission could not vote on the Ordinance because the Ordinance as it was to be voted on would not have been on file for thirty days on the date of the vote, as required by R.C.G.O. 150.478.

{¶ 10} The trial court held hearings on April 6 and 7, 1992. In its April 8, 1992 order, the court declined to enjoin a vote on the ordinance, but instead required the City to disclose information regarding the settlement negotiations between the City and WMO and also to provide " 'an explanation of what led to the revision of the planned development reducing the buffer zone of the landfill from 300 to 150 feet * * *.' " *Wall v. Dayton* (May 4, 1993), Montgomery App. No. 13419, unreported, 1993 WL 143770, quoting the trial court's order. The court specifically found no violation of the thirty-day rule.

{¶ 11} The commission scheduled a second public hearing and vote for April 15, 1992. The *Wall* plaintiffs did not seek a stay or injunction pending their appeal of the trial court's order. Having complied with the trial court's order for disclosure, the commission voted at the April 15, 1992 hearing to adopt the proposed Ordinance. The plaintiffs all concede that they either had actual notice of the modified setback or that the setback was irrelevant to them because they were opposed to the landfill anyway.

{¶ 12} On May 4, 1993, the Montgomery County Court of Appeals dismissed the appeals from the trial court's decision in *Wall*, holding that plaintiffs' claims were moot because they sought to enjoin a vote that had already been taken. The *Wall* plaintiffs did not appeal the appellate court's decision. WMO went forward with its purchase of the land and constructed a landfill in that location. Neither the *Wall* plaintiffs nor the plaintiffs in this case ever sought an injunction against the construction of the landfill.

**{¶ 13}** Appellees commenced the present action on October 14, 1993. Of the appellees in this case, only Sweeney was also a plaintiff in *Wall*. Appellees again challenged the validity of the Ordinance based upon the same grounds as in *Wall, i.e.,* that the Ordinance as voted upon was not made public for the required thirty-day period. This time, the plaintiffs sought a declaratory judgment that the Ordinance was invalid. WMO intervened in the action as a defendant.

**{¶ 14}** On September 25, 1997, the trial court granted the City's and WMO's motions for summary judgment. Appellees appealed. The Montgomery County Court of Appeals reversed the trial court in part, finding that the City had failed to give adequate notice of the setback modification. Because the written text reflecting the modified setback had not been on file for thirty days, the court of appeals found that Section 2 of the Ordinance was invalid.

**{¶ 15}** This cause is before the court upon the allowance of discretionary appeals.

_____

*Charles A. Smiley, Jr.,* for appellees.

*Freund, Freeze & Arnold, Neil F. Freund* and *Shawn M. Blatt*, for appellant city of Dayton.

*Vorys, Sater, Seymour & Pease, John Winship Read, Marcel C. Duhamel* and *Gail C. Ford*, for appellant Waste Management of Ohio, Inc.

*Barry M. Byron, Stephen L. Byron* and *John Gotherman*, urging reversal for *amicus curiae*, Ohio Municipal League.

_____

**PFEIFER**, **J.**

**{¶ 16}** We find that that the doctrine of *res judicata* applies to this case, and accordingly reverse the court of appeals.

**{¶ 17}** At the outset, we must determine whether there is an identity of parties in the two actions. *Res judicata* operates as " 'a complete bar to any

subsequent action on the same claim or cause of action *between the parties or those in privity with them*.' " (Emphasis added.) *Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees* (1982), 69 Ohio St.2d 241, 243, 23 O.O.3d 243, 245, 431 N.E.2d 672, 674, quoting *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph one of the syllabus. The plaintiffs in these consolidated cases are Rev. William J. Brown, Rev. Richard L. Righter, Jacqueline J. Patterson, James L. Sweeney, and Leonard L. Howie. Sweeney was a plaintiff in the *Wall* case, and Howie testified as a witness for the plaintiffs in that case. The privity between Brown, Righter, and Patterson and the *Wall* plaintiffs is at issue.

{¶ 18} What constitutes privity in the context of *res judicata* is somewhat amorphous. A contractual or beneficiary relationship is not required:

"In certain situations * * * a broader definition of 'privity' is warranted. As a general matter, privity 'is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the *res judicata*.' *Bruszewski v. United States* (C.A.3, 1950), 181 F.2d 419, 423 (Goodrich, J., concurring)." *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 184, 637 N.E.2d 917, 923.

{¶ 19} We find that a mutuality of interest, including an identity of desired result, creates privity between the plaintiffs in this case and those in *Wall*. In neither case did the plaintiffs seek personally tailored relief to fit their unique circumstance or factual situation. All have sought the general disallowance of the Ordinance, and all for the same reason—an alleged violation of the thirty-day publication rule. Plaintiffs all simply refer to themselves as residents and taxpayers within the city of Dayton. We find that their legal interests are the same and that they are in privity with each other for purposes of *res judicata*. To find otherwise would be to allow the Ordinance to come under constant attack simply by replenishing the ranks of plaintiffs.

{¶ 20} In *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, paragraph one of the syllabus, this court held that under the doctrine of *res judicata*, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claims arising out of the transaction or occurrence that was the subject matter of the previous action."

{¶ 21} Whether the original claim explored all the possible theories of relief is not relevant. "It has long been the law of Ohio that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit.' (Emphasis added.) * * * The doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180, quoting *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388.

{¶ 22} In *Grava*, this court held that *res judicata* " 'applies to extinguish a claim by the plaintiff against the defendant *even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action.'* (Emphasis added.)" *Grava*, 73 Ohio St.3d at 383, 653 N.E.2d at 229, quoting 1 Restatement of the Law 2d, Judgments (1982) 209, Section 25.

{¶ 23} The *Wall* plaintiffs and the plaintiffs in this action complained of the same alleged defect in the Ordinance, that the setback provision was not on file the full thirty days before the commission hearing. Whereas the first action sought to prevent a vote on the Ordinance, this action seeks to nullify the Ordinance after it has passed. The only difference in the two cases is the remedy sought. The exact same facts are at issue. The court of appeals recognized that the *Wall* court "did rule on the same procedural issue being raised by the appellants in [this case]."

Under *Grava,* even though plaintiffs are seeking a different remedy, *res judicata* extinguishes their claim.

{¶ 24} The court of appeals rejected appellants' *res judicata* argument not because the facts did not fit the situation, but because the court opined that applying *res judicata* "would result in a manifest injustice." The same court in *Wall* had stated that "we do not reach the issue of whether the Ordinance is invalid and void," since the *Wall* plaintiffs "could not and did not request that the Ordinance be declared invalid before its enactment." The court added in *Wall* that "[a]ny determination of the validity of the Ordinance must wait upon a future day." Thus, in the present case below, the court found that applying *res judicata* under those circumstances "would result in a manifest injustice to appellants because it would shield the trial court's ruling on the procedural validity of the Ordinance from appellate review, thereby denying appellants their right of appeal."

{¶ 25} The trial court's decision in *Wall* was announced on April 8, 1992. A vote on the Ordinance was not taken until April 15, 1992. The appellees had their chance at appellate review. Again, the status of the ordinance as "proposed" or "enacted" did not matter as to the factual basis of the appellees' claim. Their only argument was the lack of a complete thirty-day display of amendments to the plan. Whether that fact affected the validity of the Ordinance was the only thing at issue. Appellees should have sought a stay of the trial court's judgment pending their appeal to the appellate court. That way, very simply, the appellate court could have reviewed the trial court's ruling. The fact that the issue was mooted is the fault of appellees alone. Thus, any "injustice" is self-perpetuated and certainly does not rise to the level of nullifying *res judicata*.

{¶ 26} Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

RESNICK and COOK, JJ., concur in judgment.

_____