[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] On February 16, 2001, we granted summary judgment to the Hamilton County Commissioners, the Hamilton County Child Support Enforcement Agency, and the Hamilton County Department of Human Services.
 DECISION.
This matter is before the court pursuant to a motion to dismiss and/or for summary judgment on relators' amended petition for a writ of mandamus and a writ of prohibition. Upon consideration of the motion, all related memoranda, the arguments of counsel, case law, the pleadings, and matters outside the pleadings, the motion is hereby granted for the reasons set forth below.
Factual and Procedural Background
Relator Cheryl Denton alleges that on January 23, 1998, the Hamilton County Juvenile Court issued a warrant for the arrest of James Kinney for contempt of court for failure to appear. Denton, a friend of Kinney, claims that she then posted a cash bond of $800 to secure Kinney's release and to ensure his future appearance in court. Denton claims that the juvenile court gave her a receipt, which stated that the bond money could be applied to fines and costs. Denton alleges that, subsequent to her posting of the bond, Kinney appeared in court at all relevant times. Denton further alleges that on April 6, 1998, a juvenile court magistrate ordered that her bond payment be applied to Kinney's child-support arrearage. Additionally, Denton claims that she was and is under no legal obligation to support Kinney's children and that she was never notified of a hearing at which she could have contested such use of her funds.
Relator Johnny Young claims that he posted a cash bond of $1,000 on March 28, 1998, to secure the release and to ensure the future appearance in court of Cary Young. Unlike Denton, Young claims that his bond receipt did not state that the bond could be applied to fines and costs. Young claims that subsequent to his posting of the bond, Cary Young appeared in court at all relevant times. Young also alleges that shortly thereafter a juvenile court magistrate ordered that Young's bond payment be applied to Cary Young's child-support arrearage. Additionally, Young claims that he was and is under no legal obligation to support Cary Young's children and that he was never notified of a hearing at which he could have contested such use of his funds.
In September 1999, Denton and Young filed a class action in the United States District Court for the Southern District of Ohio, Western Division, against Bob Bedinghaus, Tom Neyer, and John Dowlin, all Hamilton County Commissioners, the Hamilton County Child Support Enforcement Agency, and the Hamilton County Department of Human Services, pursuant to Section 1983, Title 42, U.S.Code. They alleged that the defendants knew or should have known that confiscating bond money without notice or a hearing, and without any connection between the person posting the bond and the purpose for the confiscation, violated theFifth Amendment to the United States Constitution by taking property without just compensation and by taking property without procedural due process.
In November 1999, the defendants filed a motion to dismiss the class-action complaint. In August 2000, the district court granted the defendants' motion. The district court held that because the Hamilton County Juvenile Court is an agency of the state for purposes of Section 1983 and Eleventh Amendment immunity, the county commissioners had no authority over the judges in the juvenile court who had issued the orders causing the bond money to be forfeited, and, therefore, that the commissioners could not be held liable for the judges' acts. The district court also held that the Hamilton County Child Support Enforcement Agency and the Hamilton County Department of Human Services were entitled to judicial immunity because they had distributed the plaintiffs' funds pursuant to a court order. The district court's decision is currently on appeal to the United States Court of Appeals for the Sixth Circuit.
On December 1, 2000, Denton and Young petitioned this court for a writ of mandamus, a writ of prohibition, and an order of restitution against the Hamilton County Commissioners, the Hamilton County Child Support Enforcement Agency, the Hamilton County Department of Human Services, and Hamilton County Juvenile Court Judges Sylvia Sieve Hendon and Thomas R. Lipps. In their petition, realtors claim that the practice of confiscating contempt bonds posted by a third party to pay child-support arrearages is a "commonplace occurrence" in Hamilton County. They further claim that the defendants knew or should have known that confiscating bond money without notice or a hearing, and without any connection between the person posting the bond and the purpose for the confiscation, violates Section 16, Article I of the Ohio Constitution, the Fifth Amendment to the federal constitution, and R.C. 2937.40(B).
In an entry dated February 16, 2001, we dismissed the Hamilton County Commissioners, the Hamilton County Child Support Enforcement Agency, and the Hamilton County Department of Human Services; we treated the judges' answer as a motion to dismiss, which we denied; and we granted the relators leave to file an amended petition. The judges filed an answer to the amended petition on February 26, 2001. On March 6, 2001, the relators filed a motion for class certification. On April 9, 2001, the judges moved to dismiss the petition and/or for summary judgment, which the relators opposed. On October 3, 2001, we heard oral arguments on the judges' motion to dismiss and/or for summary judgment. Relators subsequently moved to file a post-hearing memorandum, which we granted. On October 19, 2001, the relators filed their post-hearing memorandum, which the judges responded to on November, 2, 2001.
Standard of Review
In their motion, the judges claim that the relators' amended petition for a writ of mandamus and a writ of prohibition should be dismissed based on Civ.R. 12(B)(1) (lack of jurisdiction over the subject matter) and 12(B)(6) (failure to state a claim upon which relief can be granted). The judges also urge dismissal of the petition pursuant to Civ.R. 12(C). They argue that the issues in the amended petition have already been decided in a prior action and that the relators are barred from relitigating them under the doctrine of res judicata. Because the defense of res judicata may not be raised in a motion to dismiss and because we have considered matters outside the pleadings, we must treat the judges' motion as one for summary judgment.[2]
Summary judgment is appropriate where it appears that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion.[3] The judges as the moving parties bear the burden of informing this court of the basis for their motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the relators' claims.[4] If the judges discharge that burden, then the relators have a reciprocal burden to set forth "specific facts" by the means listed in Civ.R. 56(E) to show that a triable issue of fact exists.[5]
 Analysis
We begin our analysis by addressing the judges' argument that relators' mandamus claims should be dismissed on res judicata grounds. The judges argue that the relators' amended petition is substantively the same as the amended complaint for civil-rights violations filed in the district court. They further contend that relators' claims against the judges arise out of the same nucleus of operative facts. The judges additionally claim that even though they were not parties to the federal litigation, they were in privity with the named defendants because their legal interests were the same.
In response, relators argue that because the judges had absolute immunity in the Section 1983 action in federal court, res judicata cannot be applied. They alternatively argue that the judges cannot meet the elements necessary for res judicata because the issue of whether the juvenile court's confiscation policy violates Ohio law was not decided in the federal action. They further argue that the judges are not in privity with the defendants in the federal action simply because they share a mutuality of interest.
In Grava v. Parkman Twp., the Ohio Supreme Court adopted the modern version of the doctrine of res judicata, stating "that a valid, final judgment rendered on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the prior action."[6] The court explained that
for two suits to be based upon the same transaction, there must be a "common nucleus of operative facts." If the two suits share a commonnucleus of operative facts, then a plaintiff cannot bring the secondaction "even though [he] is prepared * * * (1) To present evidence orgrounds or theories of the case not presented in the first action, or (2)To seek remedies or forms of relief not demanded in the first action."[7]The doctrine of res judicata applies in a proper case where there arefederal-court and state-court judgments.[8]
Here, there is evidence that both the amended petition and the original federal action derive from the same nucleus of operative facts. Both challenge as unconstitutional the juvenile court's withholding of bond money and its application to others' child-support accounts. In fact, both contain the same factual allegations and request the same relief: class certification, return of the money, an order declaring the juvenile court's alleged policy unconstitutional, attorneys fees, and other relief. The only difference between the two complaints is the addition of two state-law claims in the present action, namely that the judges' confiscation of bond money violates Section 16, Article 1 of the Ohio Constitution and R.C. 2937.40(B).
Relators assert that these two new claims bar the operation of res judicata because the federal court never reached the issue of whether the juvenile court's confiscation policy violates Ohio law. We disagree. Under Grava, res judicata applies to bar those claims that were or could have been asserted in the earlier proceeding.[9] Thus, the fact that relators have raised different theories of recovery in their current petition is of no consequence, because relators' new theories of relief are based upon the same evidence relators presented in the federal action and because relators could have raised those theories in the federal action.[10]
The remaining issue then is whether the judges are in privity with the defendants in the federal action. The judges argue that because they have the same interests as the defendants in the federal suit, they are in privity with them. Relators argue that a mutuality of interest between the judges and the federal defendants is not enough to establish privity.
To determine whether privity exists, this court must look beyond the nominal parties to the substance of the cause to determine the real parties in interest.[11] Ohio courts have held that a government official who is sued in his or her official capacity is in privity with the governmental entity.[12] Other state courts have further held that agents of the same government, even though they are not involved in the same administrative agency, are in privity since they do not represent their own rights, but the rights of the government.[13]
In the federal action, relators sued the Hamilton County Commissioners, the Hamilton County Department of Human Services, and the Hamilton County Child Support Enforcement Agency. When we look beyond the nominal parties in the federal action, the real party in interest was Hamilton County. In this case, relators sued the same defendants in addition to the two judges of the juvenile court. Under Ohio law, the judges are county employees for purposes of the relators' state-law claims.[14] Thus, the real party in interest is again Hamilton County.
Moreover, the judges and the federal defendants, particularly the Hamilton County Child Support Enforcement Agency, share similar interests and a desired result, both of which are sufficient to create privity.[15]
For instance, both entities represent the interests of Hamilton County at various proceedings, including child-support proceedings. They also share the same desired result in these cases: judgment in their favor and a finding that the challenged actions are constitutionally permissible. As a result, we conclude that privity exists between the judges and the defendants in federal court. We, therefore, hold that relators' mandamus claims in the present case are barred by res judicata.[16]
Before addressing the judges' argument to dismiss relators' additional claim for a writ of prohibition, we note that even if the relators' mandamus claims were not barred by res judicata, the judges would still be entitled to summary judgment on the basis of immunity. The judges' acts in issuing the forfeiture orders represent an official policy of the state of Ohio, which is immune from federal liability, including Section 1983 liability, by virtue of the Eleventh Amendment.[17] To the extent that relators claim that the judges' actions violate state law, both the juvenile court and the judges are entitled to immunity.[18] As a consequence, the judges are entitled to judgment as a matter of law on relators' petition for a writ of mandamus.
We next address the judges' argument that relators' request for a writ of prohibition is moot. The relators are seeking a writ of prohibition against the judges to prevent them from applying appearance bonds, which are posted by a third party, to support accounts in child-support contempt cases in which the third party is not under any legal obligation to support the children.
In order to obtain a writ of prohibition, the relators must prove the following: "the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power; (2) that the exercise of that power is unauthorized by law; and (3) that denying a writ will result in injury for which no other adequate remedy exists in the ordinary course of law."[19] A writ of prohibition may not issue, however, when the action, order, or judgment that the relators seek to have prohibited has been fully consummated and the issues have become moot.[20]
On October 22, 2000, the judges issued a memorandum to the juvenile court magistrates. The memorandum clarified the official position of the juvenile court regarding the application of appearance bonds to support accounts in child-support contempt cases. It stated that it was the "policy and practice" of the court to follow R.C. 2937.40. After reviewing the pertinent language of the statute, the memorandum concluded,
 Therefore, it will continue to be the policy of this Court that bonds posted by a person other than the accused, should be forfeited, only if the accused fails to appear before the court. If the accused does appear, as required by the Court, the bond should be released to the person or surety, who posted the bond. If the person who posted the bond wishes to voluntarily apply the bond refund to the legal obligation of the accused person, they are free to deposit such funds with the Child Support Enforcement Agency.
 Relators did not file their claim for a writ of prohibition until December 1, 2000, after the judges had issued the memorandum clarifying the court's policy. Thus, the primary relief plaintiffs are seeking for the judges to cease and desist the practice of applying a third person's appearance bond to support accounts in child-support contempt cases is moot. Because the judges' policy now comports with R.C. 2937.40, there are no actions by the judges to be prohibited. As a result, the relators' claim for a writ of prohibition is denied.
While we recognize that our disposition of this case may appear unjust, we are constrained by the current state of the law and the procedural posture of this case. Consequently, we grant the judges' motion for summary judgment on relators' petition for a writ of mandamus and a writ of prohibition.
Writ denied.
Doan, P.J., Hildebrandt and Sundermann, JJ.
[2] See State ex rel. Freeman v. Morris (1991), 62 Ohio St.3d 107,109, 579 N.E.2d 702.
[3] See Civ.R.56(C).
[4] Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264.
[5] See id. at 293, 662 N.E.2d 264; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798.
[6] 73 Ohio St.3d 379, 382, 1995-Ohio-331, 653 N.E.2d 226.
[7] Id. at 383.
[8] See Rogers v. Whitehall (1986), 25 Ohio St.3d 67,494 N.E.2d 1387.
[9] See Grava, supra, at 383.
[10] See, e.g., Zolg v. Hargrave (June 26, 1998), 1st Dist. No. C-970461; Powell v. Doyle (Oct. 8, 1998), 8th Dist. No. 72900; Plazzo v.Nationwide Mutual Ins. Co. (Feb. 14, 1996), 9th Dist. No. 17022.
[11] See Trautwein v. Sorgenfrei (1979), 58 Ohio St.2d 493, 501,391 N.E.2d 326.
[12] See, e.g., Trautwein, 58 Ohio St.2d at 501, 391 N.E.2d 326;Conner v. Reinhard (C.A.7, 1988), 847 F.2d 384, 394.
[13] See, e.g., People v. Sims (1982), 32 Cal.3d 468, 487, 651 P.2d 321;Briggs v. State (1987), 732 P.2d 1078, 1082.
[14] See, e.g., Tymico v. State (1977), 52 Ohio App.2d 298, 300,369 N.E.2d 1063; Dalton v. Bureau of Crim. Identification Investigation (1987), 39 Ohio App.3d 123, 530 N.E.2d 35; Starks v. Bureauof Motor Vehicles (Aug. 5, 1999), 10th Dist. No. 98AP-1177; R.C.2744.03(A)(6).
[15] See Brown v. Dayton, 89 Ohio St.3d 245, 248-49, 2000-Ohio-148, 730 N.E.2d 958; Schul v. Ely (Feb. 2, 2001), 2nd Dist. No. 18402.
[16] We additionally note that relators had an adequate remedy in the ordinary course of law for their Fifth Amendment claim through a Section 1983 action in federal court. See State ex rel. Carter v. Schotten,70 Ohio St.3d 89, 91-92, 1994-Ohio-37, 637 N.E.2d 306.
[17] See Mumford v. Basinksi, (C.A.6, 1997), 105 F.3d 264, 266; Conditv. Planned Parenthood Assn. (1997), 118 Ohio App.3d 384, 386,692 N.E.2d 1081; Forsyth v. Dearth (June 4, 1999), 2nd Dist. No. 98-CA-96.
[18] See Tymico v. State (1977), 52 Ohio App.2d 298, 300, 369 N.E.2d 1063
(holding that a common pleas court is a political subdivision not amenable to suit in the Court of Claims); State ex rel. Mayer v.Cincinnati (1938), 60 Ohio App. 119, 120, 19 N.E.2d 902 (holding that a court is not an entity subject to suit for damages); R.C. 2744.02; Stateex rel. Fisher v. Burkhardt, 66 Ohio St.3d 189, 191, 1993-Ohio-187,610 N.E.2d 999 (holding that a judge who possesses jurisdiction over a controversy cannot be held civilly liable for actions taken in his judicial capacity).
[19] State ex rel. White v. Junkin, 80 Ohio St.3d 335, 1997-Ohio-340,686 N.E.2d 267.
[20] See E.W. Scripps Co. v. Fulton (1955), 164 Ohio St. 261,130 N.E.2d 701.