This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Independence Excavating, Inc., dba Independence Recycling, Inc. ("Independence"), has appealed from an order of the Summit County Court of Common Pleas that granted judgment in favor of Defendant-Appellee City of Twinsburg on Independence's claim for declaratory judgment. This Court affirms.
 I
{¶ 2} Independence is an Ohio corporation that leases a parcel of land ("the property") in the city of Twinsburg that historically had been operated as a surface mine for sand and gravel. The property is currently zoned for single-family residential use, but was intermittently operated as a mine until 1998 pursuant to a nonconforming use zoning certificate issued by the city, and a surface mine permit issued by the Ohio Department of Natural Resources Division of Reclamation.
{¶ 3} In December 1986, title to the property was transferred to the First National Bank of Ohio. One year later, the property was sold to Ohio Bulk Transfer Co., its current owner. In 1998, the City of Twinsburg brought misdemeanor charges against certain officers of Ohio Bulk for violations of the city's zoning ordinances. The city claimed that the property's nonconforming use status expired as the result of a one-year discontinuance of mining operations. The Cuyahoga Falls Municipal Court agreed, and its decision was affirmed by this Court. See City ofTwinsburg v. Palladino (May 12, 1999), 9th Dist. Nos. 19168, 19169.
{¶ 4} Ohio Bulk subsequently leased the property to Independence, which filed with the city an application for a conditional use permit to reestablish mining operations on the property. The application never proceeded to the city's Planning Commission for a hearing. Instead, Independence relied on representations made by city officials that the city's Unified Development Code ("UDC") prohibits mining anywhere in the city, and does not provide for the issuance of a conditional use permit to mine under any circumstances. Anticipating that its application would be denied, Independence filed a complaint for declaratory judgment against the city in the Summit County Court of Common Pleas. Independence argued that the city's ban on mining and the ordinance providing for the discontinuance of a nonconforming use were unconstitutional. The parties submitted the case to the trial court for decision based on detailed stipulations of fact. The trial court determined that the ordinances at issue were constitutional, granted judgment in favor of the city, and dismissed Independence's complaint. Independence has timely appealed, asserting three assignments of error.
 II Assignment of Error Number One {¶ 5} "THE COURT BELOW ERRED IN ENTERING JUDGMENT IN FAVOR OF [THE CITY] BECAUSE THE CITY OF TWINSBURG'S UNIFIED DEVELOPMENT CODE, WHICH PROHIBITS MINING OUTRIGHT, IS IN CONFLICT WITH THE LAWS OF THE STATE OF OHIO AND IS THEREFORE UNCONSTITUTIONAL."
{¶ 6} In its first assignment of error, Independence has argued that the trial court erred in finding that the city's ordinance prohibiting mining is constitutional. Independence has contended that the ordinance conflicts with legislation enacted by the state of Ohio, and is therefore in violation of the Ohio Constitution.
{¶ 7} Section 3, Article XVIII of the Ohio Constitution provides:
 {¶ 8} "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."
 {¶ 9} "The test to determine when a conflict exists between a municipal ordinance and a general law of the state is `whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa.'" Village of Sheffield v. Rowland (1999), 87 Ohio St.3d 9, 11, quoting Struthers v. Sokol (1923), 108 Ohio St. 263, paragraph two of the syllabus. In the event of a direct conflict, the state regulation prevails. Id. Whether there is a conflict between the city's ordinance and the state's general law presents a question of law, which this Court reviews de novo. Ohio Bell Tel. Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147.
{¶ 10} Section 1139.01(m) of the UDC prohibits "[s]trip or open mining or extracting operations for clay, gravel, stone, coal, and other natural resources." The parties have stipulated that the UDC does not authorize the issuance of a conditional use permit to allow mining activities on the property. Independence has argued that the UDC's total prohibition of mining is in conflict with R.C. Chapter 1514, which provides for the licensing and regulation of surface mining. This Court disagrees.
{¶ 11} R.C. 1514.02(A)(9)(b) specifically requires an applicant for a surface mining permit to ensure that future land uses will not conflict with local zoning laws.[1] In Set Products, Inc. v. BainbridgeTwp. Bd. of Zoning Appeals (1987), 31 Ohio St.3d 260, the Ohio Supreme Court noted that the purpose of adopting zoning regulations is to promote the public health, safety, and morals. Id. at 265. The purpose of R.C. Chapter 1514, on the other hand, "is to ameliorate the effects of surface mining on the natural beauty and environment of Ohio, to the ultimate benefit of public health and safety." Id. In light of these distinct legislative purposes, the court held that "[t]he power of townships to enact zoning resolutions to regulate surface mining * * * has not been preempted by enactment of R.C. Chapter 1514." Id. at paragraph three of the syllabus.
{¶ 12} Although only township zoning ordinances authorized by R.C. Chapter 519 were before the court in Set Products, the Ohio Supreme Court has also acknowledged the applicability of R.C. 1514.02(A)(9)(b) in the context of municipal zoning regulations. See Rowland, supra. InRowland, the Ohio Supreme Court held that a municipality's ordinances prohibiting activities necessary to the operation of a proposed construction and demolition debris facility conflicted with provisions of R.C. Chapter 3714, which provide for the licensing and regulation of such facilities. Id. at 12. In reaching its decision, the court explicitly distinguished the state's regulation of debris facilities under R.C. Chapter 3714 from state regulation of strip mining pursuant to R.C. Chapter 1514: "In Set Products, the statutory scheme in question, R.C. Chapter 1514, contained a specific provision stating that the applicant must ensure that future land use will not conflict with local zoning plans. R.C. Chapter 3714 has no such provision." (Citation omitted.)Rowland, 87 Ohio St.3d at 12. While the court stated that dual regulation of activities by both state legislation and local zoning regulation were valid only when the local ordinances "do not alter, impair, or limit" operation of the facility, the court relied for this proposition onFondessy Enterprises, Inc. v. Oregon (1986), 23 Ohio St.3d 213. InFondessy, the state legislation at issue expressly limited the power of local authorities to adopt any regulation that "alters, impairs, or limits" the authority granted in the permit issued by the state. SeeFondessy at 217. R.C. Chapter 1514 does not contain an analogous provision.
{¶ 13} The other authorities cited by Appellant likewise do not compel a finding that the UDC's prohibition on strip mining is in conflict with state regulation under R.C. Chapter 1514. East FairfieldCoal Co. v. Booth (1957), 166 Ohio St. 379, did not involve application or analysis of the conflict provision of Section 3, Article XVIII of the Ohio Constitution. Rather, the question before the court in Booth was whether a township zoning ordinance prohibiting the appellants from removing coal from their land by strip mining arbitrarily and unreasonably deprived the appellants of their property without due process of law. Id. at 380. We will consider whether the city's ordinance in the instant case constitutes an arbitrary or unreasonable deprivation of Independence's property rights under Independence's second assignment of error. Such an analysis, however, is inapposite to determining whether there is a conflict between the UDC's prohibition of mining and R.C. Chapter 1514.
{¶ 14} Similarly, Newbury Twp. Bd. of Twp. Trustees v. LomackPetroleum, Inc. (1992), 62 Ohio St.3d 387, and Yorkavitz v. Bd. of Twp.Trustees of Columbia Twp. (1957), 166 Ohio St. 349, each involved determinations that the respective zoning regulations at issue exceeded the scope of the authority delegated by the legislature to enact zoning ordinances in furtherance of health and safety goals. In Newbury, the court held that a zoning ordinance prohibiting the drilling of oil and gas wells in any residential district was not an attempt to further health and safety goals, and so was preempted by R.C. 1509.39. Newbury,62 Ohio St.3d at 391-392. In Yorkavitz, the court held that a zoning ordinance that designated as a nuisance per se any airport constructed within the township conflicted with the General Assembly's desire to promote aviation, as expressed in its creation of the Ohio Aviation Board. Yorkavitz, 166 Ohio St. at 352-353. The analyses in Newbury andYorkavitz concerned the legislative delegation of zoning authority to townships pursuant to R.C. Chapter 519; neither case involved resolution of a conflict between a municipality's regulations and a state's general laws pursuant to Section 3, Article XVIII of the Ohio Constitution.
{¶ 15} Finally, we note that the face of the Surface Mine Permit issued to Ohio Bulk by the state specifies that "[t]he issuance of this permit means only that the application to conduct a surface mining operation meets the requirements of [R.C. Chapter 1514], and as such DOESNOT RELIEVE the operator of any obligation to meet other federal, state, or local requirements." (Emphasis sic.) See, also, Athens Metro. Hous.Auth. v. Pierson, 4th Dist. Nos. 01CA28, 01CA29, 2002-Ohio-2164, at ¶ 40 ("Many Ohio courts, including the Supreme Court of Ohio[,] have construed [R.C. 1514.02(A)(9)(b)] to mean that R.C. Chapter 1514 has not preempted local zoning ordinances."). For all the foregoing reasons, Independence's first assignment of error is without merit.
 Assignment of Error Number Two {¶ 16} "THE [CITY'S] PROHIBITION OF MINING ON THE SUBJECT PROPERTY IS ARBITRARY AND UNREASONABLE, DEPRIVING [INDEPENDENCE] OF ITS PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW."
{¶ 17} In its second assignment of error, Independence has argued that the city's prohibition of mining on the property is arbitrary and unreasonable. As such, Independence has contended, the ordinance prohibiting mining is unconstitutional because it deprives Independence of its property interest without due process of law.
{¶ 18} Zoning regulations must bear a substantial relationship to the public health, safety, morals, and general welfare, whether they are enacted through a legislative body or through a referendum of voters.Mintz v. Pepper Pike (1978), 57 Ohio App.2d 185, 190. A zoning regulation is unconstitutional if it is "`clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare[.]'" Goldberg Cos., Inc. v. Richmond Hts. City Council (1998),81 Ohio St.3d 207, 209, 213, quoting Euclid v. Amber Realty Co. (1926),272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303.
{¶ 19} Zoning ordinances are presumed constitutional, and the party challenging the constitutionality of a zoning ordinance bears the burden of proving that the regulation is unconstitutional "beyond fair debate." Goldberg, 81 Ohio St.3d at 209. The "beyond fair debate" standard is similar to the "beyond a reasonable doubt" standard. Cent.Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d 581, 584. The trial court decided the instant case based on stipulations of fact submitted by the parties, and the application of the law to those facts is a question of law which we review de novo. See, e.g., State v. Buchanan (Nov. 22, 1996), 4th Dist. App. No. 95CA48, 1996 Ohio App. LEXIS 5576, at *7.
{¶ 20} Independence has argued that the property cannot "be used for anything except mining." In support of this assertion, Independence has cited stipulations that the property adjoins an active cement crushing and recycling plant to the south, and a neighboring mining operation to the east. Independence has also pointed to the fact that "[r]esidential homes, located north of the property, are over 1800 feet from the primary mine." Based on these stipulated facts, Independence has contended that the city's prohibition of mining on the property is arbitrary.
{¶ 21} However, it was also stipulated that Ward 3, the ward in which the property is located, is currently zoned for residential use. The UDC, which includes this residential zoning classification as well as the prohibition of mining, was voted upon and approved by a majority of the electorate of Ward 3. Section 1101.03 defines the overall intent of the UDC:
 {¶ 22} "The [UDC] is adopted for the purposes of improving and protecting the public health, safety and welfare of the residents of the City; for the purposes of maintaining and enhancing the quality of life within the City; and for the purposes of preserving and enhancing environmental quality. These purposes are addressed in this [UDC] by provisions design [sic] to assure compatibility of uses and practices within districts; by facilitating the economic provision of public utilities and services; [and] by providing adequate public streets, roads and highways necessary to lessen congestion[.]"
{¶ 23} The UDC also articulates more specific purposes for each of its residential zoning classifications. As they apply to the property, these purposes include:
 {¶ 24} District R-3: Planned Low Density Residential District (one single-family dwelling unit per acre):
 {¶ 25} "The reasonableness of encouraging more intensive development in the areas so designated is predicated upon: more economical extension of public utilities and facilities to serve the district's residents, and to encourage a more economic interchange of people and goods by providing greater population concentrations near the central activity areas of the Municipality." UDC Section 1111.01.
 {¶ 26} District R-5: Cluster Development District (two single-family dwelling units per acre):
 {¶ 27} "In order to allow in site design for land areas with inherent development limitations and/or significant natural features, and to provide for greater open space than is possible through the strict application of minimum requirements of single family districts and to provide a reasonable variation in dwelling unit types and density; contiguous one-family dwellings may be clustered in accordance with the regulations of this chapter on land zoned in a R-5 District in order to encourage:
 {¶ 28} "(a) The creation of functional and interesting residential areas[;]
 {¶ 29} "(b) The provision of varying arrangements of one-family dwellings; and,
 {¶ 30} "(c) A reasonable increase in place based residential density in exchange for the preservation of substantial open space and natural environmental features." UDC Section 115.01.
{¶ 31} A city may properly exercise its zoning authority to preserve and protect the character of the designated areas in order to promote the overall quality of life for its citizens. Cent. Motors,73 Ohio St.3d at 585. The judicial role in zoning matters, however, is more limited:
 {¶ 32} "[A] court can not usurp the legislative function by substituting its judgment for that of the council. Municipal governing bodies are better qualified, because of their knowledge of the situation, to act upon these matters than are the courts. * * * The legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations[.]" Id. at 584, quoting Willott v. Beachwood (1964), 175 Ohio St. 557, 560.
{¶ 33} We cannot conclude on the record before us that the zoning of the districts containing the property for residential use, and prohibition of mining operations therein, was arbitrary. Unlike the detailed expert reports before the court in Booth, supra, there is no evidence in this case regarding the value of the property, whether used for residential or mining purposes. Moreover, the property in Booth, which was to be mined for a period of only four years and restored to productive agricultural use within six years, consisted of "run-down farm land," located on the edge of the township and approximately two miles away from "built-up areas." Booth, 166 Ohio St. at 381, 383. In contrast, the exhibits and stipulations in the instant case show that residential homes are as close as eighteen hundred feet to the primary mine. Accordingly, Independence's second assignment of error is without merit.
 Assignment of Error Number Three {¶ 34} "THE COURT BELOW ERRED IN AFFIRMING THE CITY OF TWINSBURG'S CONCLUSION THAT THE SUBJECT PROPERTY HAD LOST ITS NONCONFORMING USE."
{¶ 35} In its third assignment of error, Independence has argued that the property never lost its nonconforming use status because there was never a "voluntary" discontinuance of mining operations on the property. Independence has asserted that the city's zoning ordinance providing that a nonconforming use shall not be reestablished after the use has been discontinued for a period of one year is in conflict with state legislation that requires that any such discontinuance be voluntary. Consequently, Independence has contended, the discontinuance provision of the city's ordinance is unconstitutional, and its application was ineffective to strip the property of its nonconforming use status.
{¶ 36} The parties stipulated that prior to the adoption of the UDC, the City of Twinsburg's Planning and Zoning Code regulated the use of the property. Section 1157.02(c) of that ordinance[2] provided:
 {¶ 37} "Discontinuance. Whenever a nonconforming use has been discontinued for a period of one year or more, the nonconforming use shall not be reestablished, and any further use shall be in conformity with the provisions of this Zoning Ordinance."
{¶ 38} The issue of the property's nonconforming use status was the subject of litigation brought by the city in the Cuyahoga Falls Municipal Court in 1998 and affirmed by this Court in 1999. SeePalladino, supra. In Palladino, we affirmed the trial court's convictions of Ohio Bulk's officers charged with violations of the city's zoning ordinances. In Palladino, we specifically held that the trial court did not err in concluding that at least a one-year cessation of mining operations on the property occurred, and that the property thereby lost its non-conforming use status pursuant to Section 1157.02(c). Id. at 7-8.
{¶ 39} The city has argued that the doctrine of res judicata bars Independence from asserting the unconstitutionality of the city's discontinuance provision in the instant declaratory judgment action. The doctrine of res judicata provides that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject of the previous action." Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, syllabus.
{¶ 40} "[T]he collateral estoppel aspect [of res judicata] precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. `In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit.'" Ft. Frye Teachers Assn., OEA/NEA v. StateEmp. Relations Bd. (1998), 81 Ohio St.3d 392, 395, quoting Whitehead v.Gen. Tel. Co. (1969), 20 Ohio St.2d 108, 112.
{¶ 41} Independence has argued that litigation of the issue of the property's nonconforming use is not barred by res judicata for three reasons. We will first address Independence's contention that res judicata only applies where there is an identity of the parties, and the only defendants in the proceedings before the Cuyahoga Falls Municipal Court, James and August Palladino, are not parties to the case at bar.
{¶ 42} The Ohio Supreme Court has stated: Res judicata operates as a "`a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them.'" (Emphasis added.) Johnson's Island v. Bd. of Twp. Trustees (1982), 69 Ohio St.2d 241,243, quoting Norwood v. McDonald (1943), 142 Ohio St. 299, paragraph one of the syllabus; see, also, Brown v. Dayton, 89 Ohio St.3d 245, 247,2000-Ohio-148. While the court has acknowledged that the concept of privity in the context of res judicata is "somewhat amorphous,"[3] it determined that a mutuality of interest, including an identity of the desired result, established privity between the plaintiffs in Brown and the plaintiffs in a prior action. Brown, 89 Ohio St.3d at 248; see, also, Johnson's Island, 69 Ohio St.2d 245 (finding mutuality of interest sufficient to establish privity between township trustees seeking injunction to prevent violations of zoning ordinance and property owners seeking similar injunctive relief in prior action). "To find otherwise would be to allow the Ordinance to come under constant attack simply by replenishing the ranks of plaintiffs." Brown, Ohio St.3d at 248. Following the rationale of Brown and Johnson's Island, we conclude that the legal interests of Independence and the Palladinos in establishing the nonconforming use status of the property was sufficiently identical to establish privity between them for purposes of res judicata.
{¶ 43} Independence has also contended that in order for res judicata to apply, the particular issue raised in the second action must have been litigated in the first action. Independence has averred that the constitutionality of the discontinuance provision in the city's zoning code, and the factual contention that any such discontinuance was involuntary, were never litigated in the proceedings before the Cuyahoga Falls Municipal Court.
{¶ 44} However, "[i]t has long been the law of Ohio that `an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit.' (Emphasis added.) * * * The doctrine of res judicata
requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." Natl. Amusements, Inc.v. Springdale (1990), 53 Ohio St.3d 60, 62, quoting Rogers v. Whitehall
(1986), 25 Ohio St.3d 67, 69; see, also, Brown, 89 Ohio St.3d at 248. Furthermore, "the doctrine of res judicata is applicable to defenses which, although not raised, could have been raised in the prior action."Johnson's Island, 69 Ohio St.2d at 246.
{¶ 45} The city's prior action against the Palladinos charged them with violating zoning regulations which prohibited mining without a conditional use permit. Squarely before the court in that action was whether the nonconforming use of mining had ceased for a period of one year or more, and therefore extinguished the nonconforming use status of the property. The allegation that Section 1157.02(c) of the city's former zoning ordinance was unconstitutional because it did not require that the one-year discontinuance be voluntary is a defense that could have been raised in the prior action against the Palladinos. Independence's claim that that provision is unconstitutional is therefore subject to the preclusive effect of res judicata.
{¶ 46} Independence has also asserted that a judgment in a criminal proceeding cannot operate as res judicata in a civil proceeding. In support of this contention, Independence has cited Waldenv. State (1989), 47 Ohio St.3d 47, in which the Ohio Supreme Court stated that "the qualitative differences between civil and criminal proceedings * * * militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation." Id. at 52. The court in Walden quoted the lower court's identification of these qualitative differences:
 {¶ 47} "In the criminal proceeding, the burden of proof is upon the state * * *. Moreover, self-incrimination, privilege, and discovery rules are different. In the criminal proceeding, the state may not depose the defendant nor require the defendant to testify involuntarily.
 {¶ 48} "In a civil proceeding, not only is the burden of proof usually different, it being placed upon [the] plaintiff * * * but also the rules concerning trial procedure, discovery, evidence and constitutional safeguards differ in important aspects." Id. at 51.
{¶ 49} While we agree that the foregoing are significant qualitative differences that are often relevant to determining the applicability of res judicata, none of these factors bear directly on the determination of res judicata in the instant case. In Walden, the court refused to give an acquittal in a criminal action preclusive effect on the issue of the plaintiff's innocence in a subsequent action against the state for wrongful imprisonment.[4] In the case sub judice, however, the city has argued that res judicata bars Independence's litigation of the constitutionality of the city's ordinance prohibiting reestablishment of a nonconforming use after a one-year discontinuance. In the case against the Palladinos, as in the declaratory judgment action filed by the Palladinos' privy Independence, the party seeking to establish the property's nonconforming use would bear the burden of showing the ordinance's unconstitutionality. That burden would be identical in each action, and demonstrating a conflict between the city's ordinance and similar state legislation would not be affected by differences in discovery methods, privilege, or self-incrimination safeguards that normally differ between criminal and civil proceedings.
{¶ 50} Rather, we conclude that the unconstitutionality of the discontinuance provision of the ordinance could have been raised as a defense to the city's prosecution of the Palladinos, and the applicability of res judicata principles in the instant case is controlled by the Ohio Supreme Court's decision in Johnson's Island, supra. InJohnson's Island, the court considered an action brought by a homeowner's association and one of its members seeking to enjoin the operation of a limestone quarry by Johnson's Island, Inc. Johnson's Island defended on the ground that its operations in the quarry constituted a valid nonconforming use, but did not challenge the constitutionality of the township's zoning ordinances. The homeowner's association was successful, and Johnson's Island was enjoined from further operations of the quarry. Johnson's Island then filed a subsequent action for declaratory judgment that challenged the constitutionality of the applicable zoning ordinance. The court held that where Johnson's Island failed to raise the constitutionality argument in the first injunction action, res judicata barred it from challenging the constitutionality of the ordinance in a subsequent, declaratory judgment action. Johnson'sIsland, 69 Ohio St.2d 241, at paragraph one of the syllabus.
{¶ 51} The facts and issues presented for our review are nearly identical to those faced by the Ohio Supreme Court in Johnson's Island, except that the first action was a criminal proceeding brought against the Palladinos rather than a private action for an injunction available to aggrieved homeowners. Under the foregoing analysis of the applicable law and the stipulated facts before us, we conclude that principles of res judicata bar Independence from litigating the constitutionality of the discontinuance provision of the city's former zoning ordinance by the instant declaratory judgment action. Independence's third assignment of error is without merit.
 III
{¶ 52} Independence's assignments of error are overruled. The judgment of the trial court is affirmed.
BAIRD, P.J., CARR, J. CONCUR.
[1] R.C. Chapter 1514 has been amended effective March 15, 2002, and this provision now appears at R.C. 1514.02(A)(10)(b). In addition, R.C.1514.02(A)(3) of the amended statute requires an applicant for a surface mining permit to identify any local zoning regulations that might affect the applicant's proposed mining operations, and to explain how the applicant intends to comply with such provisions. R.C. 1514.023 of the amended statute also provides: "Nothing in this chapter or rules adopted under it shall be construed to prevent any county, township, or municipal corporation from enacting, adopting, or enforcing zoning resolutions or ordinances."
[2] A substantively identical discontinuance provision is codified in the UDC at Section 1147.03(c).
[3] The Ohio Supreme Court specified that to establish privity in the res judicata context, a "contractual or beneficiary relationship is not required." Brown, 89 Ohio St.3d at 248. We note, however, that Independence leases the property from Ohio Bulk, and Ohio Bulk owned the property at the time of the city's action for zoning violations on the property in Palladino.
[4] To succeed on a wrongful imprisonment claim under the statutes at issue in Walden, one element the plaintiff had to prove was that "the offense of which he was found guilty * * * either was not committed by him or was not committed by any person." Walden,47 Ohio St.3d at 49-50.