OPINION
{¶ 1} Appellant, William B. Reed, appeals from the judgment entry of the Portage County Municipal Court overruling his Civ. R. 60(B) motion without a hearing. For the reasons set forth below, the judgment of the trial court is reversed and remanded. *Page 2 
 {¶ 2} On November 14, 2005, appellant was involved in an automobile accident with appellee, James L. Feeler, while in the course of Mr. Feeler's employment as a truck driver for appellee, H Trucking Company. At the time of the accident, appellant was insured by Auto-Owners Insurance Company. Appellant resolved his property damage claim through Auto-Owners, less his $250 deductible.
 {¶ 3} On May 11, 2006, Attorney Gregory A. Huber was retained by Auto-Owners to file suit in the Portage County Municipal Court against appellees pursuant to its subrogation rights. Although appellant was not contacted by Auto-Owners or Mr. Huber, it requested Mr. Huber to list appellant as a plaintiff in order to recover his out-of-pocket $250 deductible.
 {¶ 4} After appellees filed their answer, Mr. Huber contacted appellant and explained he was listed as a plaintiff in the pending municipal court suit in order to recover his lost deductible. During their telephone conversation, Mr. Huber discussed the facts of the accident with appellant; however, Mr. Huber did not ask appellant whether he sustained any bodily injuries in the accident or whether appellant had filed or intended to file a personal injury lawsuit. Although Mr. Huber explained the parties may settle the property damage claim for less than the sum sought, he did not represent that any additional matters would be addressed or resolved in the municipal court case.
 {¶ 5} After negotiating with appellees, Attorney Huber received a settlement offer of $2,500, less than the demand sought in the complaint. Mr. Huber attempted to reach appellant regarding the offer but was unable to contact him. Although appellant had not reviewed the settlement offer and Mr. Huber did not have appellant's specific consent to settle, he nevertheless entered into the settlement agreement on Auto-Owners' *Page 3 
and appellant's behalf. Moreover, based upon the settlement, Mr. Huber executed a "Release of All Claims" form on behalf of Auto-Owners and appellant. On April 4, 2007, Mr. Huber signed an agreed dismissal entry which was endorsed by the trial court.
 {¶ 6} After the municipal court case was dismissed, appellant received two correspondences from appellees' agents. On April 13, 2007, appellees' insurance carrier sought information as to whether appellant had any additional claims he wished to "follow up on." On August 31, 2007, an insurance adjusting firm representing appellees' insurance carrier wrote appellant requesting he contact one of its representatives. The letter further advised appellant that the statute of limitations would run on any personal injury claim on November 15, 2007. Appellant viewed these communications as evidence that appellees' insurance carrier considered any personal injury claim arising from the underlying accident actionable and viable.
 {¶ 7} Appellant subsequently filed a personal injury suit in the Portage County Court of Common Pleas on November 9, 2007. The defendants in this suit were the same as those named in the municipal court case. Shortly after service was perfected on the defendants, appellant was advised for the first time of the outcome of the municipal court case. The defendant then filed a motion for judgment on the pleadings premised upon the release agreement and the dismissal entry filed in the municipal court case.
 {¶ 8} On January 22, 2008, appellant filed a motion to vacate the April 4, 2007 judgment entry dismissing the property damage case. In support of his motion, appellant provided the trial court with an affidavit from Mr. Huber, a copy of the *Page 4 
"settlement check," his own affidavit, a copy of the release agreement entered on his behalf by Mr. Huber, and a copy of the April 13, 2007 and August 31, 2007 letters.
 {¶ 9} Notwithstanding the unusual character of the motion, the trial court did not schedule the matter for hearing. Instead, on January 30, 2008, the trial court denied the motion. It is worth pointing out that the odd manner in which the entirety of these proceedings transpired was complimented by the trial court's own bizarre action: rather than file a formal judgment entry with at least some foundational explanation for its conclusion, the trial court simply handwrote "1-30-08 Motion denied" on the face of appellant's motion to vacate. The summary denial was subsequently time-stamped and journalized.
 {¶ 10} Appellant now appeals from the trial court's order and asserts two assignments of error for our review.
 {¶ 11} Each of appellant's two assignments of error address the trial court's denial of his Civ. R. 60(B) motion. In order to prevail on a Civ. R. 60(B) motion for relief from judgment, the movant must show:
 {¶ 12} "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE Automatic Elec, Inc. v.ARC Industries, Inc. (1976), 47 Ohio St.2d 146, paragraph two of the syllabus. *Page 5 
 {¶ 13} Where any one of the foregoing requirements is not satisfied, Civ. R. 60(B) relief is improper. State ex rel. Richard v. Seidner,76 Ohio St.3d 149, 151, 1996-Ohio-54.
 {¶ 14} Moreover, if a Civ. R. 60(B) motion contains allegations of operative facts which would warrant relief, the trial court should grant a hearing to take evidence to verify those facts before it rules on the motion. Seidner, supra, citing Coulson v. Coulson (1983),5 Ohio St.3d 12, 16.
 {¶ 15} In an appeal from a Civ. R. 60(B) determination, an appellate court must determine whether the trial court abused its discretion.Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 20. "An abuse of discretion connotes conduct which is unreasonable, arbitrary, or unconscionable." Seidner, supra.
 {¶ 16} As appellant's two assignments of error are related, we shall address them together. They respectively provide:
 {¶ 17} "[1.] The trial court erred and abused its discretion in summarily denying Mr. Reed's Motion to Vacate without affording him a hearing.
 {¶ 18} "[2.] The trial court erred and abused its discretion in denying Mr. Reed's motion to vacate."
 {¶ 19} Appellant's motion claimed the April 4, 2007 dismissal entry should be vacated because Mr. Huber signed the blanket release of claims form and the settlement agreement without appellant's consent. Appellant accordingly argued Mr. Huber did not have the authority to bind him to these agreements and he was therefore entitled to relief pursuant to either Civ. R. 60(B)(1) or 60(B)(5). Civ. R. 60(B)(1) permits relief from judgment for "mistake, inadvertence, surprise or excusable neglect." *Page 6 
Civ. R. 60(B)(5) allows for relief from judgment for any reason(s) not provided in the rule justify such relief. Appellant attached various documentation in support of his motion.
 {¶ 20} First, appellant attached an affidavit executed by Attorney Gregory A. Huber. In his affidavit, Mr. Huber testified he filed the property damage complaint after being retained by Auto-Owners Insurance. He asserted appellant was listed as a named plaintiff on the complaint at the request of Auto-Owners for redress of his $250 deductible. Mr. Huber testified he did not contact appellant regarding the suit nor was he ever hired by appellant for purposes of pursing the claim. In fact, Mr. Huber stated he did not even speak with Mr. Huber until after he received the defendants' answer. After finally contacting appellant, Mr. Huber asserted they mainly discussed the facts of the underlying accident. Mr. Huber did not ask if appellant had suffered any bodily injury or whether he was pursuing a personal injury claim against the defendants. Mr. Huber averred he told appellant there was a possibility of settling the property damage claim for less than the full amount sought; in this respect, appellant was alerted that Mr. Huber would finalize any paperwork necessary to concluding a settlement of the claim. Mr. Huber asserted he ultimately accepted the defendants' settlement offer without consulting appellant. Pursuant to the settlement, Mr. Huber stated:
 {¶ 21} "So as to finalize the settlement agreement, I agreed to signing a stipulated dismissal entry that dismissed all causes of action pending or which could have been presented between and among parties with prejudice. I returned a Release to the defendants with the notarized signature of Auto-Owners Insurance Company's representative; with respect to [appellant's] consent to the Release, I signed [his] name and put a slash next to his name and put my initials next to Mr. Reed's name. I did not *Page 7 have Mr. Reed's consent to sign Mr. Reed's name on the Release otherthan his general consent to taking steps necessary to resolving theproperty damage issue.
 {¶ 22} "* * *
 {¶ 23} "* * * I never asked and Mr. Reed and I did not ever discuss anything about Mr. Reed having a personal injury claim. Mr. Reed did notgive me authority to resolve or in any way affect his personal injuryclaim. I did not know that there was a personal injury issue or claim. (Emphasis added).
 {¶ 24} Mr. Huber additionally pointed out that the settlement check, issued to Auto-Owners Insurance Company, specifically stated that the amount was for "Full and Final Settlement of Property Damage
Claims[.]"[1] (Emphasis sic.) However, Mr. Huber added that the defendants had utilized the blanket release form, which he improperly executed on appellant's behalf, as a defense and bar to appellant's personal injury claim.
 {¶ 25} Appellant also attached his own affidavit to his motion in which he set forth the circumstances of the accident and averred the accident was a result of the defendants' negligence. Appellant asserted he was pursuing a personal injury claim against the defendants' insurer as a result of the accident. However, prior to doing so, his insurance company, Auto-Owners Insurance Company, initiated a lawsuit, pursuant to itssubrogation rights, on a property damage claim against the defendants. Although he was neither consulted nor did he specifically consent, appellant was listed in the suit as a plaintiff. The complaint sought reimbursement of the amount Auto Owners paid to appellant for property damages under his policy and reimbursement of the $250 *Page 8 
insurance deductible appellant expended pursuant to his insurance policy. Appellant stated that although he had one conversation with the attorney retained by Auto-Owners, Mr. Gregory Huber, the substance of the discussion addressed the facts of the accident. Appellant stated he did not provide Mr. Huber with consent to resolve the matter on his behalf. Notwithstanding these facts, appellant averred that Mr. Huber settled the action and signed a formal release of all claims on each plaintiff's behalf.[2] Appellant asserted he did not have the opportunity to review any of the documents relating to the settlement, did not consent to the settlement, and did not authorize any individual, including Mr. Huber, to execute a release of any his claims arising out of the underlying accident.
 {¶ 26} Finally, appellant attached copies of two separate letters sent to appellant by agents of the tortfeasors after the April 4, 2007 settlement of the municipal court case. One letter, sent by the tortfeasors' insurance company and dated April 13, 2007, sought information regarding "any additional claims that [appellant] wish[ed] to follow up on * * *." A second letter, dated August 31, 2007, written by an independent insurance adjusting company representing the tortfeasors' insurance company, wished to speak with appellant regarding any potential personal injury claim as the statute of limitations would be "running out on 11-15-07."
 {¶ 27} In his motion, appellant asserted these letters demonstrated that the defendants themselves did not contemplate the municipal court settlement of the property damage claim acted to release their potential liability for any future personal *Page 9 
injury claim. Given the timing, tenor, and substance of these letters, appellant asserted the defendants, through their insurer, were aware that the resolution of the municipal court case was the "full and final settlement of property damage claims" and should not operate to bar his personal injury claim.
 {¶ 28} Applying the record evidence to the Civ. R. 60(B) standard, we draw the following conclusions:
 {¶ 29} Initially, we hold appellant has set forth evidence that, if relief were granted, he would have a meritorious claim to present sounding in negligence. The facts and circumstances leading to the property damage case (i.e., the underlying accident) in conjunction with the letters from the appellee's agents regarding the foreseeability of such a suit compel this conclusion.
 {¶ 30} Further, appellant put forth sufficient evidence to establish that he is entitled to relief pursuant to a mutual mistake by both parties as to the scope of the authority possessed by Mr. Huber to settle the case premised upon a release of all future claims. A "mistake" as used in Civ. R. 60(B)(1) refers to one mutually made by both parties relating to an operative fact. Lewis v. Lewis, 11th Dist. No. 2007-P-0056, 2008-Ohio-730, at ¶ 24, citing Mamula v. Mamula, 11th Dist. No. 2005-T-0148, 2006-Ohio-4176, at ¶ 13-14.
 {¶ 31} Further, it is well-established that both a settlement agreement and a release, or compromise agreement, are contracts. SeeIn re All Kelley and Ferraro Asbestos Cases, 104 Ohio St.3d 605, 613,2004-Ohio-7104 (regarding settlement agreements); see, also, Noroski v.Fallet (1982), 2 Ohio St.3d 77, 79 (regarding release *Page 10 
agreements). Like all contracts, settlement and release agreements require a definite offer and an acceptance thereof. Id. And the Supreme Court of Ohio has held that such agreements must be a result of a meeting of the parties' minds in order to be binding. Id.; see, also,Rulli v. Fan Co., 79 Ohio St.3d 374, 376, 1997-Ohio-380.
 {¶ 32} A review of both appellant's and Mr. Huber's respective affidavits establishes that Mr. Huber did not have the authority to sign the blanket release on appellant's behalf. As the release was a component of the settlement, he also lacked authority to enter the settlement. Although Mr. Huber did not inquire into whether appellant intended to file a personal injury action, appellant did not volunteer such information. As a result of this failure of communication, it appears Mr. Huber improperly presumed, at the time the agreements were entered, he possessed the plenary power to act on appellant's behalf. But without specific knowledge of the conditions of the settlement offer, appellant could not have accepted the terms of the proposal. Hence, there was no meeting of the minds of the parties to the settlement and, thus, appellant cannot be legally bound.[3]
 {¶ 33} Although the agreements are not binding on appellant, the evidence reflects that both Mr. Huber as well as appellees were under the mutual mistaken impression that Mr. Huber had the authority to consent to the release of all claims and settlement. As the release form and settlement agreement were a product of this *Page 11 
mistake and foundational preconditions for the entry of dismissal, we conclude appellant is entitled to relief from this judgment.[4]
 {¶ 34} Finally, it is undisputed that appellant's motion was timely. The judgment at issue was entered on April 4, 2007 and appellant's motion was filed on January 22, 2008, well within the one-year timeframe established for Civ. R. 60(B)(1) motions.
 {¶ 35} The Supreme Court of Ohio has identified the purpose of Civ. R. 60(B) as "affording relief in the interest of justice." Moore v.Emmanuel Family Training Center, Inc. (1985), 18 Ohio St.3d 64, 67, n. 1. See, also, GTE Automatic Electric, Inc., supra, at paragraph two of the syllabus. The Court has also declared, on multiple occasions that Civ. R. 60(B) is a remedial rule that is to be construed liberally with a view of effecting a just result. State ex rel. Citizens for ResponsibleTaxation v. Scioto Cty. Bd. Of Elections (1993), 67 Ohio St.3d 134, 136; see, also, Rose Chevrolet, Inc., supra; Blasco v. Mislik (1982),69 Ohio St.2d 684, 685. The basic authorization for using the rule is found in its first sentence: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding * * *." (Emphasis added). With this in mind, it is this court's view that appellant has set forth sufficient evidence to demonstrate relief is necessary for a fair and equitable resolution of the underlying matter.
 {¶ 36} As appellant's motion and affidavits contained operative facts which would warrant relief under the rule, he was entitled to a hearing on the matter. The trial court's *Page 12 
failure to do so was an abuse of discretion. Independent of this error, however, we hold the evidence before this court is sufficient to grant relief under Civ. R. 60(B)(1). The trial court's handwritten judgment entry denying appellant relief, which was inscribed hastily on the face of appellant's motion without any supportive analysis, is neither supported by reason nor the record before this court. The trial court's action therefore exhibits an abuse of discretion which necessitates reversal.
 {¶ 37} In light of the peculiar facts of this case, our holding requires a brief statement of clarification. Because we hold appellant's Civ. R. 60(B) motion should have been granted, it necessarily follows that the trial court's April 4, 2007 judgment entry must be vacated. Further, because we hold the release of all claims agreement and the ensuing settlement agreement were premised upon the mutual mistake of both parties (viz., that Mr. Huber had the authority to act on appellant's behalf), they are also void. Therefore, the matter is reversed and remanded for further proceedings. On remand, the trial court is ordered to vacate its April 4, 2007 judgment entry and proceed in a manner consistent with this court's order and opinion. COLLEEN MARY OTOOLE, J., concurs,
DIANE V. GRENDELL, P.J., concurs in part, dissents in part with a Concurring/Dissenting Opinion.
[1] Appellant also attached a copy of the check to his Civ. R. 60(B) motion in support of his assertion that, despite the release form, even the tortfeasor's insurance carrier recognized the limited scope of the settlement.
[2] Appellant additionally attached a copy of the release form signed, on his behalf, by Mr. Huber to his motion.
[3] The evidence that appellant could not be held to the agreements entered into on his behalf could stand as a sufficient basis for relief under Civ. R. 60(B)(5), the so-called "catch all" provision of the rule. However, as we find a more concrete foundation for relief under Civ. R. 60(B)(1), we shall not utilize 60(B)(5) as the principal foundation for our conclusion.
[4] We additionally note that appellant also set forth competent evidence that Mr. Huber inadvertently entered the settlement and release which prompted the challenged judgment. Inadvertence is defined as "`[a]n accidental oversight; a result of carelessness.'" Guider v. Am.Heritage Homes Corp., 3d Dist. No. 8-07-16, 2008-Ohio-2402, at ¶ 7, quoting Black's Law Dictionary, (7th Ed. Rev., 1999), 762. A review of Mr. Huber's affidavit indicates he accidentally or carelessly assumed appellant had not suffered personal injuries during the accident. As a result of this assumption, he entered into the settlement and release on appellant's behalf thereby prompting the entry of dismissal. *Page 13