DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, in which the trial court granted a motion for reconsideration filed by appellees, Dean Diver and KeyBank National Association ("KeyBank"), thereby reversing its earlier denial of summary judgment, and dismissing claims brought by appellant, Jack Thayer, *Page 2 
in a case involving an ongoing dispute between former business partners. On appeal, Thayer sets forth the following four assignments of error:
 {¶ 2} "No. 1. The trial court erred when it granted defendants' motions for summary judgment on the basis of res judicata.
 {¶ 3} "No. 2. The trial court erred when it ruled that Thayer prospectively released the claims asserted in his complaint when he executed the September 13, 1995 Close Corporation Agreement and the November 2, 1999 Employment Termination Agreement and General Release.
 {¶ 4} "No. 3. The trial court erred when it determined that no genuine issue as to any material fact remains for trial.
 {¶ 5} "No. 4. The trial court abused its discretion by denying Thayer's right to open discovery on relevant issues."
 {¶ 6} The relevant, undisputed facts are as follows. Thayer and Diver once were principals in a now defunct engineering firm, AVCA Corporation (" AVCA"), in Toledo, Ohio. On September 28, 1990, AVCA and its employees and shareholders, including Thayer, executed a Close Corporation Agreement ("CCA"), which defined the management structure of the company. On September 29, 2004, Thayer and AVCA entered into an agreement which generally governed the terms of Thayer's employment at AVCA. On September 13, 1995, after significant changes in staffing and ownership took place, AVCA's current employees and shareholders, which still included Thayer, executed a new CCA which governed both ownership of company stock and terms of *Page 3 
employment for AVCA shareholders who were also employees. On September 14, 1995, Thayer executed a continuing guaranty in which he unconditionally agreed to guarantee debts owed by AVCA to KeyBank.
 {¶ 7} On November 2, 1999, Thayer and Diver, who was acting on behalf of AVCA, executed an "Employee Termination Agreement" ("ETA"). Pursuant to Section 5 of the ETA, Thayer agreed to terminate his employment on or before October 31, 1999, resign his positions as Executive Vice-President of AVCA and a member of AVCA's Executive Committee, and deliver to AVCA his shares of company stock and phantom stock. In exchange, Thayer was to receive $624,215 for his common stock and $567,035 for his phantom stock, to be secured by two separate promissory notes. In exchange for a non-compete agreement, Thayer was to receive an additional $850,000, to be paid in 60 monthly payments, beginning November 1, 1999.
 {¶ 8} AVCA's obligations to Thayer totaled $2,041,250, plus interest, to be made in monthly payments over a period of five years. AVCA honored its obligation to make payments to Thayer for approximately nine months, after which the payments were reduced and, eventually, eliminated. On September 5, 2000, Thayer sent AVCA a "Notice of Nonpayment" in which he stated that, as of that date, AVCA's payment was "deficient by $3,387.39."
 {¶ 9} On October 18, 2000, Thayer's attorney sent KeyBank a letter, which stated that Thayer desired to be released from the guaranty, and further stated Thayer's belief that AVCA was not going to assist Thayer in obtaining the release. Thayer also inquired *Page 4 
as to the terms necessary to obtain such a release. On November 30, 2000, James Olszewski, then-president of AVCA, sent Thayer a letter in which he stated that AVCA was experiencing cash flow problems and asked Thayer to be patient and understanding "during these turbulent times * * *." By March 2001, KeyBank required AVCA to suspend all "third party payments under shareholder, non-compete and separation agreements."[1]
 {¶ 10} On May 11, 2001, Thayer's attorney sent AVCA a second "Notice of Nonpayment/Default," demanding full payment of AVCA's obligations to Thayer. The letter referenced Section 7 of the ETA which states that, in the event of a default, Thayer is to be released from the non-compete provisions of the CCA. That same day, Thayer's attorney sent a notice to the escrow agent who was holding Thayer's AVCA stock, demanding the return of Thayer's 6,500 shares pursuant to Section 5.3 of the ETA. On June 2, 2002, Thayer filed a shareholder lawsuit against AVCA.
 {¶ 11} Over the next several years Diver, Thayer, and various representatives of AVCA and KeyBank exchanged correspondence relating to Thayer's desire to retrieve his AVCA stock, help the company out of financial difficulty and, at the same time, obtain a release from his guaranty of AVCA's debts to KeyBank. During that time period, Diver attempted to convince Thayer to give up his quest to retrieve the stock and help run AVCA, while also asking KeyBank not to release Thayer from his guaranty unless *Page 5 
Thayer was willing both to dismiss his shareholder lawsuit and give up his AVCA stock. KeyBank, in turn, advised Thayer that he would not be released from the guaranty unless those same conditions were met.
 {¶ 12} Between 2002 and 2003, KeyBank attempted to help AVCA restructure its debt. As part of that effort, Diver injected $300,000 of his personal funds into AVCA. However, all attempts to restore the company to its former profitability were ineffective. On May 13, 2003, Diver wrote Thayer a letter in which Diver stated that AVCA was attempting to enter into a forbearance agreement with KeyBank; however, in order for the effort to succeed it would be necessary for Thayer to give up his AVCA stock. Diver further stated that since Diver was the "only shareholder who invested personal finds in the last few months to save the company, * * * [Diver] should be the only remaining shareholder." One week later, emails were exchanged between Gwen Micham and Michael Axel of KeyBank, in which the two agreed that Diver's salary should be set at $150,000, and that only interest on the loans from Diver to AVCA should be paid until KeyBank was repaid by AVCA.
 {¶ 13} In June 2003, Diver sent an email to AVCA's counsel, Patricia Fugee, and Michael Axel at KeyBank, in which Diver stated that Thayer would have to give up his AVCA stock before Diver would agree to a release of Thayer's guaranty to KeyBank. On October 3, 2003, Janet Ginn, KeyBank's Vice President of Asset Recovery, sent Thayer a letter in which she stated that, if Thayer did not comply with Diver's request, KeyBank *Page 6 
would "take whatever action is necessary to collect the total amount owed on [AVCA's] loans."
 {¶ 14} In April 2004, Thayer communicated to AVCA his intent to return to the company in a management role. In June 2004, AVCA's management and corporate counsel began working on a plan to place the company in receivership and, eventually, sell its assets to another engineering firm, SSOE, for $600,000. When Thayer became aware of the plan, he made an offer to purchase AVCA for a higher price. However, the receivership process was initiated before Thayer was able to secure financing. On July 1, 2004, AVCA issued a corporate announcement of its negotiations to sell AVCA's assets and transfer all its employees and client business to SSOE. On July 8, 2004, Diver sent a letter to Keith Leaning of Owens Corning, one of AVCA's largest clients, which set out a timetable for the receivership and subsequent sale of AVCA to SSOE.
 {¶ 15} On August 30, 2004, a receivership hearing was held, at which the court-appointed receiver stated that several parties were interested in purchasing AVCA, including Thayer and SSOE. However, the receiver also stated that, of all the potential purchasers, SSOE had the most financial resources, and was able to hire all 58 of AVCA's employees. In addition, time was of the essence since AVCA had to vacate its current leased location. The receiver stated that, although Thayer's offer was higher than SSOE's offer, the party financing Thayer's offer needed an additional two weeks to conduct due diligence. Axel added that AVCA's debt to KeyBank was approximately $3.8 million, and was not secured by sufficient assets. *Page 7 
 {¶ 16} Thayer's attorney stated that Thayer was willing to hire any AVCA employee that wanted to stay with the company. He also stated that, due to Diver's actions, Thayer was not paid the money owed to him, while Diver was receiving reimbursement for the funds he loaned to the company. At that point, the trial court interjected that, if Thayer "feels that the bank and/or SSOE * * * and/or Mr. Diver have acted in any way improperly, that he certainly does have an adequate remedy at law. * * *" Ultimately, after weighing all the relevant factors, the trial court approved the sale of AVCA to SSOE.
 {¶ 17} On January 3, 2005, Thayer filed the complaint herein in the Lucas County Court of Common Pleas, in which he alleged that: (1) Diver breached his fiduciary duty to Thayer by not allowing Thayer, a shareholder and creditor of AVCA, to participate in management decisions; (2) Thayer was damaged by KeyBank's misuse of control over AVCA's management; (3) KeyBank breached a duty of good faith and fair dealing by manipulating the salaries of AVCA's managers to facilitate the repayment of debts owed to KeyBank and by refusing to release Thayer from the guaranty; and (4) Diver and KeyBank engaged in a conspiracy to exclude Thayer from AVCA's management. In addition to seeking damages for these claims, Thayer asked the trial court to declare that Thayer is no longer a guarantor of AVCA's debt and to order KeyBank to release Thayer from the guaranty. Finally, Thayer asked the trial court to award him punitive damages, attorney fees and costs in bringing this action. Diver filed an answer on March 3, 2005. On March 4, 2005, KeyBank filed an answer and a counterclaim in which it sought *Page 8 
enforcement of the guaranty against Thayer for the outstanding balance of AVCA's loan which was, at that time, more than $3 million.
 {¶ 18} On December 13, 2005, Thayer filed a motion to compel discovery, in which he sought documents pertaining to Diver's employment agreement with SSOE. On December 21, 2005, KeyBank filed a motion for summary judgment and memorandum in support, in which it asserted that Thayer, as an AVCA shareholder, had no standing to assert lender liability claims against KeyBank and, in any event, Ohio law does not recognize an "instrumentality theory" of liability against lending institutions. KeyBank also asserted that, even if such a cause of action existed, the kind of evidence presented by Thayer does not demonstrate liability on the part of KeyBank.
 {¶ 19} KeyBank further asserted that no fiduciary duty exists between KeyBank and AVCA that creates a duty of good faith and fair dealing, since the only relationship between those entities was that of lender and creditor. In support, KeyBank argued that it is not a party to the guaranty which was executed by AVCA and Thayer, and it is not required to release Thayer from that obligation. Finally, KeyBank argued that Thayer's complaint fails to allege that KeyBank committed an underlying wrongful act that supports his conspiracy claim and KeyBank is entitled to judgment on its counterclaim as a matter of law because, pursuant to the terms of the guaranty, the bank is entitled to cognovit judgment against Thayer.
 {¶ 20} On December 28, 2005, Diver filed a memorandum in opposition to Thayer's motion to compel discovery, in which he argued that the documents requested *Page 9 
by Thayer were either not relevant, or at least should be subject to in camera review. On January 4, 2006, Thayer filed a reply, in which he argued that the documents are relevant, since they establish that Diver negotiated the terms of his employment with SSOE before the receivership proceedings were initiated. On March 3 and March 14, 2006, Thayer filed additional motions to compel discovery, in which he asked the trial court to order AVCA and SSOE, respectively, to produce documents relative to discussions that occurred prior to and during the receivership proceedings that are relevant to Diver's employment with SSOE.
 {¶ 21} On November 15, 2006, the trial court filed a judgment entry in which it found that genuine issues of material fact existed as to: (1) whether Diver breached a fiduciary duty to Thayer; (2) whether KeyBank and Diver acted "in a malicious manner in bad faith" in regard to Thayer; (3) whether KeyBank is liable to Thayer under a lender liability theory; and (4) whether KeyBank is entitled to judgment on its counterclaim pursuant to the terms of the guaranty. Accordingly, both motions for summary judgment were denied. In addition, the trial court denied Thayer's motions to compel discovery.
 {¶ 22} On September 13, 2007, Diver filed a motion for reconsideration of the trial court's judgment. In his motion, Diver asserted that two "threshhold arguments" were not previously considered by the trial court which are determinative of the issues raised on summary judgment. Those issues are: (1) whether Thayer previously released his claims against Diver; and (2) whether Thayer's claims are barred by the doctrine of res judicata. In support of his first assertion, Diver argued that, by signing the ETA, Thayer *Page 10 
"knowingly and voluntarily released all of his present and future claims against the AVCA's directors and officer — including Mr. Diver." In support of his section assertion, Diver argued that all of Thayer's claims could have, and should have, been raised in the receivership proceedings. Since Thayer did not raise those claims, he is "forever barred by the doctrine of res judicata from re-litigating the instant issues and claims against Mr. Diver."
 {¶ 23} Thayer filed a response in opposition to the motion for reconsideration on September 20, 2007. In support, Thayer argued that none of the issues in this action were raised or litigated in the receivership proceedings, because they simply were not relevant to the valuation and sale of AVCA to SSOE. Accordingly, they are not barred by res judicata. Thayer further argued that Section 1 of the ETA was never intended to be a full and final release of any and all claims that could arise between the parties, since the issues in this action did not even exist at the time the ETA was executed.
 {¶ 24} On September 24, 2007, KeyBank filed a motion for reconsideration, in which it alleged that the trial court failed to address its argument that Thayer's claim against KeyBank must fail because Ohio does not recognize the instrumentality theory of liability. In addition, KeyBank joined in Diver's assertion that Thayer's claims are barred by res judicata.
 {¶ 25} On November 20, 2007, the trial court filed a judgment entry, along with findings of fact and conclusions of law, in which it found that Thayer's claims against Diver and KeyBank are barred by res judicata. In addition, the trial court found that the *Page 11 
release is enforceable, and that it bars Thayer's claims against Diver. The trial court also found that the guaranty is enforceable; therefore, KeyBank is entitled to judgment against Thayer on its counterclaim. Based on those findings, the trial court vacated its November 15, 2006 order, granted Diver's and KeyBank's motions for reconsideration, and dismissed Thayer's claims against Diver and KeyBank. A timely notice of appeal was filed in this court on December 19, 2007.
 {¶ 26} In his first three assignment of error, Thayer asserts that the trial court erred by granting Diver's and KeyBank's motions for reconsideration and summary judgment. In deciding whether the trial court properly granted or denied a motion for reconsideration, "we apply a de novo standard of review. Accordingly, we afford no deference to the trial court's decision and independently review the record in the light more favorable to the nonmovant to determine whether summary judgment is appropriate." Dunn v. North Star Resources, Inc., 8th Dist. No. 79455, 2002-Ohio-4570, ¶ 10, citing Baiko v. Mays (2000), 140 Ohio App.3d 1. Keeping this standard of review in mind, we will address each of Thayer's first three assignments of error separately.
 {¶ 27} In his first assignment of error, Thayer asserts that the trial court erred by finding that his claims against Diver and KeyBank are barred by res judicata. In support, Thayer first argues that KeyBank waived a res judicata defense by not raising it as an affirmative defense in response to Thayer's original complaint. In addition, Thayer argues that the receivership was a "collection and liquidation action" involving AVCA, KeyBank and SSOE. Consequently, issues between Thayer and KeyBank and Thayer *Page 12 
and Diver, respectively, were irrelevant to the issues addressed in the receivership action and could not have been litigated in that proceeding.
 {¶ 28} As to Thayer's first argument, the record shows that KeyBank did not assert the defense of res judicata in its answer, filed on March 24, 2005. KeyBank did, however, assert the general affirmative defenses of "waiver, estoppel and laches." Nevertheless, KeyBank argues on appeal that the "estoppel" listed in its answer is the functional equivalent of asserting the affirmative defense of "res judicata" in a response pleading, as required by Civ. R. 8(C).
 {¶ 29} Civ. R. 8(C) states, in relevant part, that, in responding to a preceding pleading, "a party shall set forth affirmatively * * * estoppel, * * * res judicata, * * * and any other matter constituting an avoidance or affirmative defense." This court has held that, pursuant to Civ. R. 8(C), affirmative defenses must be raised in a responsive pleading or be deemed waived. Cincinnati Ins. Co. v. Oancea, 6th Dist. No. L-05-1007, 2005-Ohio-4872, ¶ 22, citing Jim's Steak House v.Cleveland (1998) 81 Ohio St.3d 18, 20. "[T]he purpose of requiring affirmative defenses to be pleaded is to avoid surprise at trial."Geo. Byers Sons, Inc. v. Smith (Aug. 10, 1999), 10h Dist. No. 98AP-1117, citing Chandler v. General Motors Acceptance Corp. (1980),68 Ohio App.2d 30.
 {¶ 30} The concept of equitable "estoppel" was long-ago articulated by the Ohio Supreme Court as follows:
 {¶ 31} "where one by his acts or declarations, made deliberately and with knowledge, induces another to believe certain facts to exist, and that other rightfully acts *Page 13 
on the belief so induced and is misled thereby, the former is estopped to afterwards set up a claim based upon facts inconsistent with the facts so relied upon, to the injury of the person so misled." Ensel v.Levy (1889), 46 Ohio St. 255, 260.
 {¶ 32} In contrast, the doctrine of res judicata has been described by the Ohio Supreme Court as encompassing both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel.)" Grava v. Parkman,73 Ohio St.3d 379, 381, 1995-Ohio-331. However, res judicata requires "`an existing final judgment or decree between the parties to litigation [which] is conclusive as to all claims which were or might havebeen litigated in a first lawsuit.'" Natl. Amusements, Inc. v.Springdale (1990), 53 Ohio St.3d 60, 62 (emphasis sic), quotingRogers v. Whitehall (1986), 25 Ohio St.3d 67, 69. In other words, "[r]es judicata requires a plaintiff to `present every ground for relief in the first action, or be forever barred from asserting it.'" Hempstead v.Cleveland Bd. of Educ., 8th Dist. No. 90955, 2008-Ohio-5350, ¶ 7, quoting Grava v. Parkman, supra.
 {¶ 33} On consideration of the foregoing, we find that the affirmative defenses of "estoppel" and "res judicata" are not the same for purposes of compliance with Civ. R. 8(C). KeyBank's cursory reference to "estoppel" in paragraph 41 of its answer[2] is, *Page 14 
therefore, insufficient to provide notice of the affirmative defense of res judicata pursuant to Civ. R. 8(C). KeyBank's argument to the contrary is without merit.
 {¶ 34} KeyBank further asserts that, even if res judicata was not properly raised in the answer, the issue has not been waived because it was tried by implied consent of the parties. Specifically, KeyBank asserts that the issue of res judicata was properly raised in its motion for reconsideration. This argument is also meritless because, while the affirmative defense of res judicata may be raised for the first time in a motion for summary judgment, see Business Data Sys., Inc. v. GourmetCafe Corp., 9th Dist. No. 23808, 2008-Ohio-409, ¶ 15, "[a] party may not raise an issue, particularly one that is determinative of a claim or cause of action, in a posttrial motion." Blair v. McDonagh, 1st Dist. No. C-070238, 2008-Ohio-3698, ¶ 38, citing Turner v. Cent. Local SchoolDist. (1999), 85 Ohio St.3d 95, 98-99.
 {¶ 35} For the foregoing reasons, we find that KeyBank waived the affirmative defense of res judicata when it failed to raise the issue pursuant to the requirements of Civ. R. 8(C). Accordingly, the remaining issue raised in Thayer's first assignment of error, whether Thayer's claims are barred by res judicata, applies only to Diver.
 {¶ 36} For res judicata to apply in a given situation, the party asserting the it must demonstrate the following three elements: "(1) the plaintiff brought a previous action against the same defendant; (2) there was a final judgment on the merits of the previous action; and (3) the new claim was pursued in the first action, or it arises out of the same transaction that was the subject matter of the first action."Hempstead, supra. However, *Page 15 
as a general rule, res judicata is applicable if the parties to the subsequent action are either identical to those of the former action, or were in privity with them. Johnson's Island, Inc. v. Board of Twp.Trustees of Danbury Twp. (1982), 69 Ohio St.2d 241, 244, citingLakewood v. Rees (1937), 132 Ohio St. 399, 403. (Other citations omitted.)
 {¶ 37} Diver asserts on appeal that Thayer's claims against him are barred by res judicata for two reasons. First, Diver argues that, as AVCA's CEO and majority shareholder, he is in privity with AVCA, which was a party in the receivership proceeding. Second, Diver argues that the receivership proceeding "involved the same transaction or series of transactions underlying [Thayer's] claims against Mr. Diver" in this action. Finally, Diver argues that Thayer's claims, if successful, will result in his recovery of proceeds from the sale of AVCA to SSOE and, therefore, they constitute an improper collateral attack on the judgment in the receivership action. We address each of these arguments separately.
 {¶ 38} As to Diver's first argument, in Brown v. Dayton,89 Ohio St.3d 245, 2000-Ohio-148, the Ohio Supreme Court stated that privity, in the context of res judicata, "is somewhat amorphous. * * * [P]rivity is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.'" Id. at 248, (quoting Thompson v. Wing (1994),70 Ohio St.3d 176, 184, 637 N.E.2d 917). For purposes of res judicata, privity is created by "`a mutuality of interest, including an identity of desired result * * *.'" Hempstead, supra, ¶ 10, quoting Brown v. Cityof Dayton, supra. *Page 16 
 {¶ 39} Thayer's claims in this case have been brought against Diver, not against AVCA. In addition, it is undisputed that the result Thayer desired in the receivership proceeding was not the same as the one desired, and obtained, by Diver on behalf of AVCA. Accordingly, Diver has failed to establish that Thayer was in privity with AVCA, or that Thayer's goal in appearing at the receivership proceeding amounted to a "mutuality of interest," or "identity of desired result" that would bar him from bringing individual claims against Diver in a separate proceeding. Diver's first argument is, therefore, meritless.
 {¶ 40} As for Diver's second argument, pursuant to R.C. 2735.01(E), "a common pleas judge may appoint a receiver when a corporation is insolvent or in imminent danger of insolvency." Campbell Investors v.TPSS Acquisition Corp., 6th Dist. No. L-02-1037, 2003-Ohio-1399, ¶ 15. "The purpose of a receivership is generally to preserve assets that are the subject of the litigation or that may be used to satisfy a judgment, pending their ultimate disposition by the court." Firstmerit Bank, N.A.v. Washington Square Ent., 8th Dist. No. 88798, 2007-Ohio-3920, ¶ 7.
 {¶ 41} The issues raised at the receivership hearing related to the sale of AVCA. Thayer, through his attorney, Erik Chappel, appeared at the receivership hearing for the sole purpose of competing with SSOE to purchase AVCA's assets. A review of the transcript of that hearing, which was made a part of the record in this case, reveals the following exchange in regard to individual claims Thayer may have against KeyBank and/or Diver: *Page 17 
 {¶ 42} "The Court: Finally, Mr. Chappel, I guess I have one further question. I know there's a concern here that they're [KeyBank and Diver] underselling the assets to the detriment of your client [Thayer], but doesn't he have remedies for a suit at law should that be the case?
 {¶ 43} "Mr. Chappel: He does, You Honor, yes. * * *"
 {¶ 44} Later in the receivership proceedings, before awarding the sale of AVCA to SSOE, the court made the following statement:
 {¶ 45} "I have considered several factors here. I have considered the recommendation of the receiver, the recommendation of the plaintiff bank, the person for whom this receiver [sic] was created. I have considered the impact on the current employees of AVCA. I've considered the impact on Mr. Thayer. And I've also considered the fact that if [Thayer] feels that the bank and/or SSOE and/or Mr. Diver have acted in any way improperly, that he certainly does have an adequate remedy at law. But I have considered the impact that this is going to have on him. * * *"
 {¶ 46} In addition, Diver filed a motion to consolidate this case with the then-pending receivership action on March 3, 2005. In support of his motion, Diver argued that "all of Thayer's allegations stem directly from the operative facts surrounding the asset sale of AVCA. Thus, the two cases involve common questions of law and fact and are proper for consolidation [pursuant to Civ. R. 42(A)]." On March 14, 2005, Thayer filed a brief in opposition to consolidation, in which he argued that his claims against Diver stemmed from a course of conduct over several years leading up to the sale of *Page 18 
AVCA, and not from the sale itself. Both parties represent on appeal that the request to consolidate the two cases was ultimately denied.[3]
 {¶ 47} Thayer's complaint in this case sets forth individual claims of breach of fiduciary duty and conspiracy against Diver. As set forth above, those types of claims were deemed irrelevant to the outcome of the receivership proceeding on two occasions. Although Diver argues that Thayer's claims against him should be barred because they arose from events that ultimately culminated with the demise of AVCA, a review of the record shows that the events underlying Thayer's claims actually began several years before the receivership action and sale of AVCA to SSOE. Finally, Diver has not demonstrated how Thayer's claims, if successful, would have the effect of undoing the sale of AVCA's assets to SSOE. Diver's second argument is meritless.
 {¶ 48} As to Diver's final argument, a collateral attack has been described as "`an attempt to defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved.'" Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision (1999),85 Ohio St.3d 609, 611, quoting Kingsborough v. Tousley (1897),56 Ohio St. 450. Black's Law Dictionary (8th Ed. 2004) 278, further defines a "collateral attack" as "[a]n attack on a judgment in a proceeding other than a direct appeal; esp., an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective." Ohio *Page 19 Pyro, Inc. v. Ohio Dept. of Commerce, Div. of State Fire Marshal,115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 17.
 {¶ 49} In Ohio Pyro, Inc., supra, the Ohio Supreme Court recognized that res judicata can be applied to prevent either a modification or a collateral attack on a previous judgment. Id., ¶ 34, citing Grava v.Parkman Twp. (1995), 73 Ohio St.3d 379, 381-382. However, unlike res judicata, which applies only to parties and their privies, the collateral attack doctrine can be applied to both parties and nonparties. Id., ¶ 35. Accordingly, "a collateral attack on a judgment issued by a different court in a civil case will succeed only when the first ruling was issued without jurisdiction or was the product of fraudulent conduct." Id., ¶ 37.
 {¶ 50} Diver argues on appeal that Thayer's purported "attack on the results of the receivership case is improper" pursuant to OhioPyro, supra, because Thayer has not alleged that the judge in the receivership action did not have jurisdiction, or that the receivership order was obtained by fraud. However Thayer's complaint seeks damages from Diver, not AVCA. As set forth above, the conduct that Thayer alleges to be improper began several years before the initiation of the receivership action which resulted in the sale of AVCA to SSOE. Thus, while a judgment in Thayer's favor might have an incidental effect on Diver's ability to retain the fruits of that sale, it cannot possibly be construed as a collateral attack on the integrity of the judgment in the receivership case. Diver's reliance on Ohio Pyro is, therefore, misplaced. *Page 20 
 {¶ 51} On consideration of the foregoing, we find that Thayer's claims against KeyBank and Diver are not barred by res judicata, and do not constitute an improper collateral attack on the judgment in the receivership action. Therefore, the trial court erred by granting KeyBank's and Diver's motions for reconsideration on those bases. Thayer's first assignment of error is well-taken.
 {¶ 52} In his second assignment of error, Thayer asserts that the trial court erred when it found that Thayer released his claims against Diver and, derivatively, KeyBank, and granted summary judgment to Diver and KeyBank on that basis. In support, Thayer argues that, in Ohio, a release does not operate as a bar to future claims that have not accrued as of the date the release was executed. In addition, Thayer argues that the release is ineffective according to its own terms, due to AVCA's breach of the CCA and the ETA, and Diver's breach of fiduciary duty. Finally, Thayer argues that KeyBank is not entitled to enforce the release as a matter of law, since it was not a party to the CCA or the ETA, and it is not an intended third-party beneficiary of either of those agreements.
 {¶ 53} We note at the outset that an appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129; Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C). *Page 21 
 {¶ 54} Ohio courts have held that "[a] release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." Delinger v. City of Columbus (Dec. 7, 2000), 10th Dist. No. 00AP-315; Okocha v. Fehrenbacher (Feb. 15, 1995), 8th Dist. Nos. 65458, 65645, 65656 and 67254, citing Haller v. BorrorCorp. (1990), 50 Ohio St.3d 10. "[A]bsent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor." Id.
 {¶ 55} In Ohio, releases are routinely held to bar liability for future tortious behavior "as long as the intent of the parties, with regard to exactly what kind of liability and what persons and/or entities are being released, is stated in clear and unambiguous terms." Id. However, a release from liability for future tortious conduct will be narrowly construed. Id. (Other citations omitted.) It is a well-recognized rule that when a release is so general that it includes claims which were not within the contemplation of the parties when it was executed, the release will not bar recovery of such claims.Isroff v. Westhall Co. (Feb. 21, 1990), 9th Dist. No. 14184. In cases where a release is worded in language that is ambiguous or too general, courts have held that the intent of the parties is to be resolved by the trier of fact. Id.; Haller v. Borer Corp., supra.
 {¶ 56} Paragraph 5 of the CCA states that "[AVCA's] [s]hareholders do hereby release and hold the Board of Directors, Executive Committee and officers harmless from any and all liability for actions taken by them in good faith pursuant to this Agreement as Directors, Executive Committee, officers or otherwise." *Page 22 
 {¶ 57} Section 1 of the ETA states, in relevant part, that:
 {¶ 58} "1.1 As a material inducement to AVCA to enter in this Employment Termination Agreement and General Release, THAYER, * * * assigns unconditionally releases and forever discharges AVCA and each of AVCA's owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorney, divisions, subsidiaries, affiliates, and all persons acting by, through, under or in concert with any of them from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney's fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, * * * which THAYER now has, owns or holds, or claims to have owned or held, or which THAYER at any time hereinafter may have owned or held or claimed to have owned or held against AVCA except as provided in Section 1.3 below.
 {¶ 59} "* * *
 {¶ 60} "1.3 Notwithstanding anything contained in Section 1.1 * * *, neither THAYER nor AVCA waives or releases any claim arising from the other party's breach of this Agreement or any obligation hereunder."
 {¶ 61} In addition, Section 7 of the ETA provides, in relevant part, that:
 {¶ 62} "In the event of AVCA's default in the payment of any of its obligations under Section 5.1, 5.2 or 5.3 [the payment provisions] thereof * * *, AVCA hereby agrees that Thayer shall be immediately released from all of his obligations under *Page 23 
Section 11(B) [the non-compete provision] of the CLOSE CORPORATION AGREEMENT. This provision shall not be deemed a liquidated damage clause and THAYER may pursue any other claims for damages which he may have, including without limitation, payment of AVCA's obligations under Sections 5.1, 5.2 and 5.3 hereof."
 {¶ 63} The release provisions of the CCA and ETA were clearly intended to protect AVCA and its officers, shareholders, owners, or affiliates from any claims Thayer had at the time the agreements were executed. However, the language stating that Thayer agreed to release claims that he "at any time hereinafter may have owned or held or claimed to have owned or held against AVCA" is less clear, since "may have owned," "held", "or claimed to have owned or held" could be construed to refer only to activity that occurred before the releases were signed. In addition, pursuant to paragraph 1.3 and Section 7 of the ETA, Thayer is not prohibited from bringing any claims that arise out of AVCA's breach of its obligations under the ETA. Finally, the record contains no conclusive evidence that KeyBank was an intended third-party beneficiary of the CCA or the ETA.
 {¶ 64} This court has reviewed the entire record that was before the trial court and, upon consideration, finds that genuine issues of fact remain as to whether the release provisions of the CCA and ETA apply to Thayer's claims against Diver and KeyBank as alleged in the complaint. Accordingly, the trial court erred by granting summary judgment to Diver and KeyBank and dismissing Thayer's claims on that basis. Thayer's second assignment of error is well-taken. *Page 24 
 {¶ 65} In his third assignment of error, Thayer asserts that the trial court erred by finding that no genuine issues remain for trial. In support, Thayer argues that issues remain as to whether: (1) Diver breached a fiduciary duty to Thayer as a minor shareholder of AVCA; (2) Diver breached a fiduciary duty to Thayer as a creditor of AVCA; (3) Diver improperly excluded Thayer from an opportunity to help AVCA recover from its financial difficulties so that it could repay its debt to Thayer; (4) Diver used AVCA to secure financial gain for himself while denying those same opportunities to Thayer; (5) Diver "concocted" the receivership action to benefit himself and cause financial harm to Thayer; and (6) Diver and KeyBank conspired to injure Thayer by threatening to enforce the guaranty if Thayer did not drop his claims, and by using the receivership as a way to eliminate AVCA's obligations to Thayer. As set forth above, the trial court erroneously found that the claims represented in these arguments are barred by both res judicata and the terms of the release. Accordingly, Thayer's appeal based on those issues is not well-taken.
 {¶ 66} Thayer next asserts that the trial court erred by finding that KeyBank is not liable under the instrumentality theory of lender liability. In support, Thayer argues that he suffered damages because KeyBank "exerted significant control" over the day-to-day business affairs of AVCA, which included allowing key management personnel salaries to be overpaid so those individuals could pay back personal loan obligations to KeyBank, while forbidding AVCA to make payments to Thayer pursuant to the ETA. *Page 25 
 {¶ 67} In its November 20, 2007 judgment entry, the trial court found that "the instrumentality theory of lender liability has not been adopted in Ohio. * * *" Accordingly, Thayer's lender liability claims against KeyBank were dismissed as a matter of law. The trial court's observation is correct to the extent that, to date, no plaintiff in Ohio has been awarded damages under an instrumentality theory of lender liability. However, at least two Ohio courts have analyzed the issue addressed in Krivo Ind. Supply Co. v. National Distillers and ChemicalCorp. (Aug. 7, 1973), 483 F.2d 1098.
 {¶ 68} In, Krivo, the United States Court of Appeals for the Fifth Circuit, applying Alabama law, held that "a creditor-debtor relationship * * * does not per se constitute control under the `instrumentality' theory. The general rule is that the mere loan of money by one corporation to another does not automatically make the lender liable for the acts and omissions of the borrower." Id. at 1104. However, "lenders are not automatically exempt from liability under the `instrumentality' rule. If a lender becomes so involved with its debtor that it is in fact actively managing the debtor's affairs, then the quantum on control necessary to support liability under the `instrumentality' theory may be achieved." Id. at 1105. The elements necessary to hold a lender liable under an instrumentality theory are: (1) "total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation"; and (2) "fraud or injustice proximately result[ing] from a misuse of this control by the dominant corporation." Id. at 1106. *Page 26 
 {¶ 69} In Escape Enterprises, Ltd. v. Gosh Enterprises, Inc., 10th Dist. Nos. 04AP-834, 04AP-857, 2005-Ohio-2637, the Tenth District Court of Appeals stated that it was "unaware of any Ohio cases applying an instrumentality theory [of lender liability]." However, the appellate court acknowledged the trial court's finding in that case, based onKrivo, that a lender "stepped out of the traditional role of lender protecting its collateral, and subjected itself to potential liability" under the instrumentality rule when it took over the day-to-day management of certain franchise restaurants. Id., ¶ 39-40.
 {¶ 70} Similarly, in Wilmar Corp. v. Akron Tire Supply, Inc. (Jan. 29, 1997), 9th Dist. No. 17861, Bank One attempted to manage the business of its customer, Akron Tire Supply, in order to minimize losses for debts owed to several third-party creditors, including Wilmar Corp. When Wilmar realized it would not be paid by Akron Tire it brought suit against Bank One, asserting an instrumentality theory of liability. The trial court in that case granted Bank One's motion for summary judgment. In upholding the trial court's decision on appeal, the Ninth District Court of Appeals stated that there is no authority in Ohio for the "precise proposition that a bank may be held liable under an instrumentality theory [of liability]." However, the appellate court went on to set out the test articulated in Krivo, and stated that, even if it were to apply the theory in that case, Bank One would have no liability because there was no evidence to demonstrate the essential element of "fraud or injustice" resulting from a misuse of the lending institution's control of its debtor. Id. *Page 27 
 {¶ 71} As set forth above, even though Ohio courts have not yet imposed lender liability under the instrumentality theory, they have been willing to consider the facts of individual cases under the test set forth in Krivo, supra. Therefore, we cannot say that Thayer's claim against KeyBank is barred purely as a matter of law, on the basis that such a cause of action has not been "recognized" in Ohio. Accordingly, the trial court erred by awarding summary judgment to KeyBank solely on that basis.
 {¶ 72} Next, Thayer asserts that the trial court erred when it found that KeyBank did not release Thayer from the terms of the guaranty. In support, Thayer argues that the guaranty was released by KeyBank when Thayer executed the acceptance letter on January 16, 2003.
 {¶ 73} The guaranty executed by Thayer states, in relevant part:
 {¶ 74} The undersigned, Jack Thayer * * * in order to induce Society National Bank [now KeyBank] * * * to extend or continue to extend credit to and/or to purchase or acquire obligations owing by AVCA CORPORATION * * * hereby unconditionally and absolutely guaranties the punctual and full payment when due, by acceleration or otherwise, of all such credit and/or obligations, whether now owing or hereafter arising * * *.
 {¶ 75} "6. This Guaranty is unconditional and continuing * * *.
 {¶ 76} "7. The payment obligations of the undersigned under this Guaranty shall be absolute, unconditional and irrevocable and shall be satisfied strictly in accordance with the terms of the Guaranty * * *." *Page 28 
 {¶ 77} A guaranty is a contract through which one party guarantees payment for debts incurred by another person or entity. Nesco Sales Rental v. Superior Elec. Co., 10th Dist. No. 06AP-435, 2007-Ohio-844, ¶ 10. Generally, Ohio courts construe guaranties, and releases thereof, "in the same manner as they interpret other contracts." Id., ¶ 12, citing G.F. Business Equip., Inc. v. Liston (1982), 7 Ohio App.3d 223,224. As with all other contracts, a release requires "a definite offer and an acceptance thereof." Auto Owners Ins. Co. v. Feeler, 11th Dist. No. 2008-P-0025, 2008-Ohio-6886, ¶ 31, citing In re All Kelley andFerraro Asbestos Cases, 104 Ohio St.3d 605, 613, 2004-Ohio-7104. The Supreme Court of Ohio has held that "such agreements must be a result of a meeting of the parties' minds in order to be binding." Id.
 {¶ 78} As set forth above, Thayer and KeyBank officials engaged in negotiations regarding the release of Thayer's guaranty on several occasions. In particular, the records shows that, on December 19, 2002, Gwen Micham wrote a letter to Thayer in which she stated that KeyBank was willing to release Thayer from the guaranty if Thayer would dismiss the shareholder lawsuit and restructure his $298,594 personal loan to KeyBank by making monthly payments of $1,800 over a five year period, and also provide KeyBank with personal financial statements and tax returns on an annual basis. Thayer responded to KeyBank's offer by changing the term of the personal loan to ten years, stating he would only provide personal financial statements "as appropriate," and refusing to provide tax returns. Although the shareholder suit was eventually dismissed, Thayer *Page 29 
refused to give up all of his AVCA stock, and the personal loan was never restructured. On August 5, 2003, Janet Ginn sent a letter to Thayer, rescinding Micham's offer.
 {¶ 79} On consideration of the foregoing, we find that KeyBank and Thayer had various discussions about release of the guaranty, and certain overtures were made by both parties to resolve the issue. However, there was never a clear meeting of the minds as to the exact requirements for a release of Thayer's guaranty. In any event, the record contains no evidence of an agreement between KeyBank and Thayer that all requirements for obtaining a release had been met. Accordingly, the trial court did not err by finding that KeyBank is entitled to judgment on its counterclaim as a matter of law. Thayer's argument to the contrary is without merit.
 {¶ 80} Finally, Thayer asserts that the trial court erred by denying his claim for punitive damages. However, it is well-settled that "an award for actual damages is a prerequisite to the award of punitive damages." Preston v. All Vinyl Fences and Decks, Inc., 11th Dist. No. 2008-T-0015, 2008-Ohio-6997, ¶ 44, citing Richard v. Hunter (1949),151 Ohio St. 185, 187. Accordingly, the issue of whether appellant is entitled to punitive damages is premature at this time.
 {¶ 81} On consideration of the foregoing, we find affirm the trial court's finding that KeyBank did not release Thayer from the guaranty; however, we conclude that the trial court erred by dismissing Thayer's claims against Diver and KeyBank as set forth above. Thayer's third assignment of error is therefore well-taken in part and not well-taken in part. *Page 30 
 {¶ 82} In his fourth assignment of error, Thayer first asserts that the trial court erred by denying his motion to compel discovery as "moot" in a scheduling order filed on January 24, 2006, and also by granting various motions to quash and motions for protective orders filed by Diver and KeyBank in its judgment entry filed on September 13, 2007. Second, Thayer asks this court to remand this case for a jury trial as to his claims against KeyBank.
 {¶ 83} In support of his first assertion, Thayer argues that his motion to compel discovery was not "moot," since documentation of Diver's negotiations for employment with SSOE, including his salary package, was never produced as requested in a motion to compel filed by Thayer on December 13, 2005. Thayer further argues that Diver's employment records are both relevant and discoverable, and the trial court's refusal to compel their discovery significantly hampered Thayer's ability to support his claims of breach of fiduciary duty and conspiracy. Thayer also argues that the records of AVCA's corporate counsel are discoverable, since they relate to Thayer's claim of breach of fiduciary duty brought by a minority shareholder against a majority shareholder.
 {¶ 84} A trial court's ruling in discovery matters will not be overturned on appeal absent a finding of an abuse of discretion which "prejudicially affects a substantial right of the moving party * * *."Knowles v. Krebs, 6th Dist. No. E-08-023, 2009-Ohio-774, ¶ 42, citingOrbit Electronics, Inc. v. Helm Instr. Co., Inc., 167 Ohio App.3d 301,2006-Ohio-2317, ¶ 10. However, as set forth in our disposition of Thayer's third assignment of error, the claims for which Thayer desires additional discovery are not properly before *Page 31 
this court in this appeal. Accordingly, the trial court, on remand, is in the best position to decide discovery issues related to those claims. See Hanshaw v. Tsou, 4th Dist. No. 01CA6, 2001-Ohio-2377, citingNeftzer v. Neftzer (2000), 140 Ohio App.3d 618; Whiteman v.Whiteman (June 6, 1995), 12th Dist. No. 12-229. (Discovery rulings are generally considered interlocutory in nature and are, therefore, not appealable.)
 {¶ 85} As to Thayer's request for a jury trial, the record shows that KeyBank filed a motion to strike the jury demand as to Thayer's claims against KeyBank on September 25, 2007. That motion was never decided by the trial court and is, therefore, presumed denied. See State v.Pate, 8th Dist. No. 90093, ¶ 2, fn 1, 2008-Ohio-2934. Thayer's request is, therefore, moot. For the foregoing reasons, Thayer's fourth assignment of error is not well-taken.
 {¶ 86} The judgment of the Lucas County Court of Common Pleas is reversed in part and affirmed in part. The case is hereby remanded to the trial court for further proceedings consistent with this decision. Appellant and appellees are ordered to share equally the costs of this appeal pursuant to App. R. 24.
JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
[1] In addition to its agreements with Thayer, AVCA had several retirement agreements with other former employees. Disputes related to those agreements are not part of this appeal.
[2] In addition to a general reference to the affirmative defense of "estoppel" in paragraph three of his answer, Diver also asserted that Thayer's claims were barred "by reason of the Court's approval of the Receiver's sale of AVCA's assets, and [Thayer's] failure to timely file and appeal from that decision (paragraph six), and "[Thayer's] claims are barred, in whole or in part, by a prior adjudication pursuant to principles of collateral estoppel and/or res judicata."
[3] The order denying Diver's motion to consolidate is not in the record on appeal; however, its existence is not disputed by the parties.
 *Page 1